CHARLES PERRY, Trustee, vs. D. B. HALL et al.

MAY 11, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Trusts.  Support of Beneficiary.*

Testamentary bequest directed trustee to collect the income, and after payment of expenses, to pay over the same to wife of testator, with power, when in his judgment necessary and proper for the comfortable support of the wife, to sell so much of the trust estate as might be necessary and apply the proceeds to "her support in comfort during her life, and after her decease to convey any of the trust property remaining in his hands unexpended to such persons as at my wife's death shall be my next of kin."

Upon the question whether after decease of widow the trustee had authority to apply the trust property in satisfaction of a claim for board, nursing, attendance, medicine and medical services furnished to the widow prior to her decease, whether or not authorized by the trustee:—

*Held,* that the manifest purpose of the will being to make suitable provision for the comfortable support of the wife, the whole trust estate stood pledged for such purpose, and the trustee would be in the exercise of his rights by discharging the obligations incurred for such support, provided, in case he did not authorize such charges, that they were reasonably appropriate for her comfortable support.

(2)  *Vesting in Possession.  Trusts.*

*Held,* further, that there was no immediate vesting in possession of the interest of the next of kin upon the death of the wife, but the act of the trustee was necessary to convey the trust property to the next of kin.

(3)  *Trusts.  Appropriation of Fund.*

*Held,* further, that there was an appropriation of a fund for a specific purpose with a designation of a class of persons with capacity to receive upon the happening of an event, the persons who might take and the amount they would take being contingent, and in no sense a remainder.

(4)  *Discretionary Power under Trust.*

*Held,* further, that the question as to the duration of a discretionary power under a trust is one of intention evidenced by the whole instrument containing the power.  Such power remained in the present succeeding trustee, and he was still authorized to sell sufficient of the trust estate to defray the ex-

penses incurred for the comfortable support of the widow to the same extent that he would have been authorized by the trust to provide her support in comfort during her life.

BILL for instructions on facts fully set forth in opinion.

BLODGETT, J.    This is a bill for instructions brought by the complainant as trustee under the will of W. Frank Hall, late of the town of East Greenwich, who deceased leaving a last will and testament which was duly probated on the 31st day of July, 1875.    The will, after making provision for the payment of debts and charges against his estate and a specific bequest of one thousand (1,000) dollars, disposed of all the rest, residue, and remainder of his property in trust as follows:

"2d.    All the rest residue and remainder of my property of whatever kind or nature of which I shall die possessed or in any way entitled to I give devise and bequeath unto Nathan F. Dixon Sr. of Westerly his heirs and assigns forever in trust for the following purposes to collect the income from time to time as it becomes payable and after deducting all expenses incident to the trust including a reasonable compensation for his services to pay over the same to my wife Dorcas B. Hall for her sole use and benefit and in further trust whenever in his judgment necessary and proper for the comfortable support and maintenance of my said wife to sell and dispose of the trust estate in his hands or so much thereof as may be necessary and apply the proceeds, as far as necessary, to her support in comfort during her life and in further trust after her decease to convey any of the trust property remaining in his hands unexpended to such persons as at my wife's death shall be my next of kin according to the Statutes of distribution then in force in the State of Rhode Island such persons to take in the proportions prescribed by such Statutes.    And I further authorize my said trustee whenever necessary or advantageous in his judgment to sell and dispose of any of the property of the trust for the purpose of better investment and to invest the proceeds of such sales and all other moneys belonging to the trust fund not required to be expended by the previous provis-

ions of this trust, in safe and profitable stocks bonds or mort-
gages, to be held under the same trusts and with the same
powers as the original fund."

" 1st page 2d line from bottom word 'undistributed' erased
and 'unexpended' inserted before signing."

Nathan F. Dixon, Sr., qualified as trustee and acted until
his decease. Thereafter Nathan F. Dixon, Jr., was duly ap-
pointed and qualified as trustee and acted as such until his
death. In January, 1898, the complainant, Charles Perry, was
duly appointed and qualified as trustee and has since then dis-
charged the duties of trustee.

Dorcas B. Hall, the widow of the testator, deceased at Provi-
dence on the 5th day of October, A. D. 1908, and all the persons
named in this bill, excepting D. B. Hall, are alleged to have
been the next-of-kin of the testator at the death of said Dorcas
B. Hall, according to the Statute of Distribution then in force
in the State of Rhode Island.

The estate which passed to the trustee under the terms of
this will was wholly personal property: and in the exercise of
the powers conferred on the trustee, the corpus of the estate,
as well as the income, has been largely drawn upon for the
support and maintenance of the testator's widow, Dorcas B.
Hall.

On the 5th day of November, A. D. 1908, the respondent,
D. B. Hall, presented to the trustee his bill for board, nurses'
board, attendance of nurse, attendance of servants, medicine
and medical attendance furnished by him to the said Dorcas B.
Hall, widow of the testator, between June 16, 1906, and
October 5, 1908, including therein support and maintenance,
medical attendance, etc., to said Dorcas B. Hall for and during
her last illness.

The complainant, admitting that he had trust property of
greater value than the amount of said bill, but expressing a
doubt as to his authority to apply the trust property, or any
portion thereof, in satisfaction of this claim (the next-of-kin
claiming distribution without regard to the payment of said
claim), has brought this bill in equity joining all these alleged

next-of-kin and this respondent to determine his authority and duty in the premises.

The respondent, D. B. Hall, making answer to said bill, among other things, asserted that the complainant, as trustee under the will of W. Frank Hall, was at all times possessed of sufficient property and effects to provide for the comfortable support and maintenance of said Dorcas B. Hall, and that during the life of said Dorcas B. Hall, he, said trustee, approved and sanctioned the provisions made by said respondent, D. B. Hall, as necessary and proper for the support and maintenance of said Dorcas B. Hall in comfort; and directed and instructed the said respondent D. B. Hall to continue to furnish and supply her needs and look after her and attend to the payment of her bills and that he, said trustee, would see that the said respondent, D. B. Hall, was reimbursed, and paid therefor. He further avers that said trustee did not otherwise provide for the necessary support and maintenance of said Dorcas B. Hall, and that said D. B. Hall was cognizant of the interest which said Dorcas B. Hall had as beneficiary under said last will and testament of said W. Frank Hall, deceased, and, in reliance upon said approval, sanction, direction, and instruction of said trustee and his promise to pay as aforesaid, the said respondent, D. B. Hall, furnished the supplies and accommodations and made the payments and outlays charged for by said D. B. Hall and sent his bill therefor to the complainant as requested by the latter.

Upon a consideration of this bill and answer, the Superior Court has certified to this court the following question of law: "Under the will of W. Frank Hall, hereto annexed, is the trustee, after the decease of the testator's widow, empowered to apply the trust property, or any portion thereof, or the proceeds of any sale thereof, to the payment of board, nurses' board, attendance of nurses, attendance of servants, medicines, medical attendance, etc., furnished to the said widow prior to her decease either

"(a) if the trustee did not authorize the furnishing of the said board and other items, or

"(b) if the trustee expressly authorized and directed the furnishing of the said board and other items?"

(1)    The manifest purpose of the will is to make suitable provision for the comfortable support and maintenance of his wife. The entire estate is placed under the control of the trustee for that purpose, the corpus of the estate as well as its income. He practically placed the trustee in his own shoes giving him all the control of his entire estate to be used for this purpose and used as generously and unreservedly as he would himself use it for the proper care of his wife. The carrying out of that desire was apparently the dearest wish of the testator, as well as the only continuing purpose expressed in his will. The testator's estate was given to the trustee, his heirs and assigns forever for the sole use and benefit of the wife, to support and maintain her comfortably with authority to sell and dispose of the trust estate in his hands, or so much as might be necessary, and apply the proceeds to this purpose. The proper exercise of this power involves the whole of the trust property, and the authority of the trustee is commensurate with that power and duty. It extends to the wife's needs and necessities, to her support in comfort, and is exhausted only after being so applied. The whole trust estate stands pledged for her comfortable support and maintenance. The trustee is not appointed as guardian of her person and estate. It is not a prerequisite to get the benefit of this trust that the money must first have been apportioned and turned over to her use. She might, very properly, under the terms of this instrument have her comfortable support and maintenance and the trustee would be in the exercise of his proper rights by discharging the obligations incurred for such support and maintenance.

The will also provides, "and in further trust *after* her decease *to convey* any of the trust property remaining in his hands *unexpended* to such persons, etc."

(2)    The will, therefore, by its terms clearly shows that there is no immediate vesting in possession of the interest of the next-of-kin upon the death of the wife. The estate still continues in the trustee and his heirs "in further trust *after* her decease

*to convey.*" The will by its terms shows that the act of the trustee is necessary to convey the trust property to the next-of-kin. The trustee has the legal title to the trust estate, and until he makes such conveyance the next-of-kin cannot be said to have the legal title: until then their estate does not vest in possession. A test which may be suggested is: Supposing the trust property to have come into the custody of a third person who wrongfully refused to give it up,—who could maintain trover? The answer would seem to be that only the trustee could maintain such action. The next-of-kin in order to get the legal title in them must have a conveyance from the trustee; and if he declined to convey the next-of-kin would have to resort to a court of equity to compel the trustee to convey. Until that conveyance is made by the trustee upon his own act, or under order of a court of equity, the next-of-kin have no title that would avail them in a court of law.

If, as shown above, the testator practically placed the trustee in his own shoes to the full extent of the estate bequeathed for the purpose of supplying in a comfortable manner support to his wife, then it follows that the duty of the trustee is not discharged until he pays the obligations incurred in furnishing her comfortable support, to the extent of the estate which came into his hands.

Under the first question certified to the Court: if the trustee did not authorize the furnishing of the board and other items charged—the important question is: Were the board and other items furnished reasonably appropriate for the comfortable support and maintenance of the wife?

In this connection it is submitted that there is nowhere before the court any suggestion that the board and medical attendance, etc., furnished were not reasonably necessary for the wife. There is no plea or averment that the trustee had otherwise made provision for the comfortable support and maintenance of the wife during the period covered by this claim; on the other hand there is the express averment in the answer to the bill filed that the trustee did not otherwise provide for the comfortable support and maintenance of the

wife. If the entire trust estate is pledged to this purpose and what was furnished was only furnished in the accomplishment of that purpose, there can be no injustice in using the estate to pay the claims necessarily arising. Surely a trustee could not be permitted by collusion with the next-of-kin to deprive the wife of her proper support and maintenance and thereby enhance the value of the estate which came to the next-of-kin. He could not by his bad faith or collusion destroy the purpose of the trust. It is equally true that he could not in good faith destroy the purposes of the trust. The trustee knew that the widow was entitled, under the terms of the trust, to the very things which said D. B. Hall furnished her. He must have known that, not supplying these things himself, either the widow was not receiving the support to which she was entitled under the terms of the will, or that somebody else was supplying that support and, as the fund was pledged to this purpose, it was a matter of indifference to him whether these things were furnished upon his order in the first instance or paid for by him from the trust fund after they had been furnished. It was sufficient for him that the wife was receiving the comfortable support provided for her by her husband's will, and for the furnishing of which the whole estate, if necessary, was liable.

(3) In the case before the court there is an appropriation of a fund for a specific purpose. There is no remainder resting upon a life estate. There is merely a designation of a class of persons with capacity to receive upon the happening of a certain event; who they are that will receive is contingent, depending upon their being alive at the death of Mrs. Hall, and upon their being of the next-of-kin of W. Frank Hall as fixed by the statutes of distribution then in force in the State of Rhode Island. The persons who may take and the amount they will take are contingent. It might be persons who were not born at the time of the death of W. Frank Hall. It might be because of a change in the statutes that those who were of the next-of-kin at the time of his decease would not be within this class by the statute in force at the time of the death of his

wife. There might be something to take of the estate and there might be nothing. The trust clearly provides that simply what is *unexpended* shall be distributed within that class. In the case at bar the interests of the next-of-kin of W. Frank Hall are in no sense a vested remainder, in fact they do not take by remainder at all, but whatever their interest may be it is highly contingent. Who they are is not ascertainable at the beginning of the trust (or what might be spoken of as the beginning of the life estate), but at the end of a life then in being, the life of Dorcas B. Hall, the wife. They may be those who were not in being at the beginning of the trust. There may be a new class added to the next-of-kin or some who were within the class at the time the trust began may not be within the class at the death of the wife, because the will limits it to the next-of-kin at the death of the wife according to the statutes of distribution then in force in Rhode Island.

It is further dubious in that there may be something and there may be nothing for them to take inasmuch as the will provides that the trustee shall convey to them "any of the trust property remaining in his hands unexpended."

(4)     Counsel for certain respondent heirs-at-law, who oppose the power of the trustee now to make sale for the payment of the expense of supporting Dorcas B. Hall in her lifetime, have stated on their brief "the question as to the duration of a discretionary power under a trust is one of intention, evidenced by the whole instrument containing the power." With that statement we agree and are clearly of the opinion for the reasons above set forth that such power now remains in the trustee. Obviously in this proceeding we cannot now determine either the justice of the claim of D. B. Hall, or its amount, and if the trustee and the claimant are unable to agree upon these matters, the determination of them must be made in the usual way. All that we now decide is that the trustee is still authorized to sell sufficient of the trust estate to defray the expense incurred for her comfortable support to precisely the same extent that he would have been authorized by the trust to provide her "support in comfort during her life." The justice and amount of

the claim of D. B. Hall being first established, both the questions submitted are answered in the affirmative and the papers in the case with the decision of this court certified thereon are ordered sent back to the Superior Court.

*Edwards & Angell,* for complainant.

*John P. Beagan, Arthur A. Thomas, Quinn & Kernan,* for respondents.