MARY KELLY MAZZOLA vs. FREDERICK M. MYERS, JR.,
executor, & others.

Suffolk.    March 6, 1973. — May 14, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Trust*, Marital deduction trust, Investments, Trustee's discretion.
*Devise and Legacy*, Marital trust.    *Jurisdiction*, State law affect-
ing Federal tax.

This court declined to act on the Federal question whether a marital
trust established under the will of a testator qualified for the
Federal estate tax marital deduction.  [633, 634]
A suit in equity by a widow for a determination of her rights, and the
duties and obligations of the fiduciaries under her husband's will,
"with respect to her rights to income from the marital trust"
established under the will, involved interpretations of the will
by this court which will be binding on the Federal tax authorities.
[633–634]
Under the general trust law of Massachusetts, a conclusion was
unavoidable that a marital trust, created by the will of a testator
whose substantial estate consisted almost wholly of stock in fam-
ily business corporations which had borrowed money from banks
on terms prohibiting the declaration of dividends, and which was
designed to take advantage of the maximum deduction available
on the testator's Federal estate tax return, could be funded with
securities in the family corporations, all of the businesses of which
the testator desired his fiduciaries to "continue . . . at . . . [his]
death, . . . and to 'remain' in his family, even though the securi-
ties did not 'produce any income'."  [634–636]
With respect to a testator whose substantial estate consisted almost
wholly of securities in family corporate enterprises which the
testator wished to preserve for his family, and whose will divided
his assets into two parts, one of which was a marital trust, it
was held that a provision in the will that "anything herein con-
tained to the contrary notwithstanding no power or authority
given" to the fiduciaries under his will "shall be so broad as to
prevent my estate from receiving full advantage of the federal
estate tax marital deduction, and any power or authority herein
granted . . . shall be restricted and limited to the extent required
to preserve the said marital deduction," required a conclusion that,
as between the conflicting questions of preservation of the family
enterprises and of qualification of the trust for the marital deduc-
tion, the decision must be in favor of qualifying the trust.  [636–639]
A widow, by bringing a suit in equity for an interpretation of her
husband's will, did not come within a provision thereof that any
beneficiary who took "any action to attack or challenge . . . [the]
will, or any provision thereof, shall be conclusively deemed to have
predeceased" the testator.  [639]

Mazzola v. Myers.

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on January 21, 1972.

The case was reserved and reported by *Spiegel*, J.

*Thomas E. Goode & John J. Sullivan (Bruce S. Gordon* with them) for Mary Kelly Mazzola.

*Thomas C. Cameron* for Patricia Bilodeau.

*Frederick M. Myers, Jr.*, for Frederick M. Myers, Jr., executor, & others.

WILKINS, J. This bill for declaratory relief, which has been presented to us on a case stated, seeks a resolution of a controversy concerning the funding and administration of a purported marital deduction trust provided for under the will of John J. Kelly (Kelly). The case was reserved and reported without decision by the single justice. Kelly died in May, 1970, leaving a widow, their two sons and four daughters, all of whom are of full age.[1]

## THE KELLY ESTATE.

Kelly left a gross estate which his executor has valued for Federal estate tax purposes at more than $4,280,000. The executor determined the value of the adjusted gross estate for Federal estate tax purposes at approximately $3,788,000 and the value assigned to the marital deduction at approximately $1,894,000.

Ninety-five per cent of the assets in Kelly's gross estate consisted of stock ownership interests in family corporations. These corporations, many of which bore the name Kelly, were engaged in a variety of business activities,

---

[1] The defendants are Frederick M. Myers, Jr., named as executor in Kelly's will; Myers and two other individuals (William G. Pinsonnault and Joseph E. Ryan) named as trustees under the will; all persons named in the will; and the Commissioner of Corporations and Taxation. The Internal Revenue Service received notice of the proceeding. Appearances, answers and briefs on behalf of the defendants have been filed only as to the fiduciaries named in the will and one of Kelly's daughters (Patricia Bilodeau). The answer and the brief on behalf of the daughter support the position taken by the plaintiff.

principally in Berkshire County.[2]  These enterprises included the operation of the Brodie Mountain ski area in New Ashford; the manufacture of wooden pallets used in shipping; the wholesale and retail sale of lumber; the operation of sawmills in Bellows Falls, Vermont, and White Plains, New York; the operation of a bar and of a diner; and the ownership of residential and commercial real estate.  In addition, these corporations, speaking collectively, owned substantial tracts of timber land and timbering rights in western Massachusetts, southern and central Vermont and eastern New York.  Steps have been taken to merge all the corporations into a single new corporation (Kelly Enterprises, Inc.).  The assets proposed to be transferred to the new corporation had a total value (based on values shown in the Federal estate tax return) of approximately ninety-two per cent of Kelly's gross estate.[3]

As a group the Kelly corporations have, and continuously have had, substantial bank borrowings under terms which require the various corporations to indorse each other's obligations and prohibit the declaration of dividends.  The long-term indebtedness of the Kelly corporations exceeds $1,000,000, requiring annual payments toward principal and interest of over $300,000.  None of the Kelly corporations has paid dividends, except for $20,000 and $18,000 paid by one corporation in 1968 and 1969, respectively.[4]  The executor believes that "over a

---

[2] Although not explicitly set forth in the case stated, from the terms of his will and from the treatment of the subject by the parties in their briefs, it seems reasonably clear that these various family enterprises were initially developed solely through the efforts of Kelly, assisted, however, in later years by his sons and one daughter.

[3] The discrepancy between ninety-five per cent (the proportion of the estate assets in family corporations) and ninety-two per cent (the proportion of the estate assets going into the consolidated entity) is attributable, at least in part, to the redemption of some stock held by the estate in the Kelly Lumber Company, Inc.  See Int. Rev. Code of 1954, § 303 (as amended through 26 U. S. C. § 303 [1970]).

[4] The prohibition in the loan agreement against payment of dividends was waived in these instances.  These payments of dividends were required as the result of an Internal Revenue Service determination that there had been an "improper" accumulation of surplus in the Kelly Lumber Company, Inc.

period of years" the new corporation can be so operated as to produce income for its stockholders.

## THE KELLY WILL.

Kelly provided in his will,[5] which was executed in June, 1962, that, after payment of debts and expenses, his assets should be divided into two parts. With one part, which he characterized as the "Wife's Part," he undertook to create a marital deduction trust (the marital trust). Under the terms of the marital trust the net income is payable to his wife at least quarterly during her life, and principal may be paid to her in the discretion of the trustees. His wife was given "an unrestricted power of appointment" by will over the principal and accrued and unpaid income in the marital trust. The language of the will describing (a) the method for determining the amount to be placed in the marital trust, (b) the circumstances under which the trustees could make payments of principal to the wife, and (c) the wife's power of appointment is set forth in the margin.[6]

---

[5] There were two codicils. One, dated January 11, 1963, added Joseph E. Ryan as a trustee. The other, dated February 3, 1967, made changes in the distributive shares of the nonmarital deduction trust upon the death of the plaintiff.

[6] *Amount to be Placed in the Marital Trust.* "I. (*A*) The first part, hereafter called the 'Wife's Part' shall consist of that fractional share of the aforesaid rest, residue and remainder of my estate which shall be in amount equal in value to the maximum estate tax marital deduction (allowable in determining the federal estate tax on my gross estate) diminished by the value for federal estate tax purposes of all other items in my said gross estate which qualify for said deduction and which pass or have passed to my wife under the other provisions of this will or otherwise. In making the computations necessary to determine the amount of this gift, the final determinations in the federal estate tax proceedings shall control."

*Discretionary Payments of Principal.* "II. The Wife's Part shall be held, managed and disposed of by my Trustees as follows: . . .

"(*B*) My Trustees are hereby specifically authorized to keep any residence owned by me at my death and to pay out of the income and/or principal of the Wife's Part, for the upkeep and maintenance (including taxes, interest and charges) of such residence, to provide a home for my wife. If the income of the Wife's Part shall not be sufficient to maintain my wife in an adequate and proper manner, my Trustees may invade the principal of the Wife's Part to the extent required to provide this amount. As with all other discretionary powers herein granted my Trustees, the exercise, or non-exercise,

All parties concur that the marital trust is a "pecuniary bequest"[7] and that the will provides for a "life income with power of appointment" trust.

The Kelly will contains provisions designed to take advantage of the maximum deduction available on his Federal estate tax return with respect to transfers to his surviving spouse. The will excepts the assets of the marital trust from the operation of the will's spendthrift clause.[8] It further provides that in the event of "simultaneous" death, Kelly's wife should be deemed to have survived him. All estate and inheritance taxes are to be paid from estate assets other than those going to the marital trust. And, most significantly, Article XIII of Kelly's will provides that "[a]nything herein contained to the contrary notwithstanding, no power or authority given to my Trustees or Executors shall be so broad as to prevent my estate from receiving full advantage of the federal estate tax marital deduction, and any power or authority herein granted which would so affect my estate shall be restricted and limited to the extent required to preserve the said marital deduction."

The will provides that the other part of the residue (called the "Remainder Part") should be held in trust with the income payable to his wife during her life and

___

of this power of invasion shall be solely in the discretion of my Trustees. It is my hope that my wife's total income following my death may be maintained at at least approximately $12,000 per year, and I desire my Trustees to bear this desire in mind in exercising the discretion herein conferred upon them."

*Power of Appointment.* "II . . . (*C*) At the death of my wife, the then remaining principal of the Wife's Part, together with all accrued and unpaid income thereon, shall be paid over and distributed by my Trustees as my said wife may by her last will and testament direct, free and clear of all provisions of trust herein contained. I hereby give my wife an unrestricted power of appointment over the Wife's Part."

[7] This form of marital trust share has more fully been described as a "formula pecuniary gift." See Casner, Estate Planning (3d ed. 1961) 793, where suggested language for such a marital deduction trust appears which is strikingly similar to the language of Article I (*A*) of the Kelly will quoted in the first portion of footnote 6.

[8] This provision was not required, at least as to the wife's right to income, in order to qualify for the marital deduction. Reg. 20.2056(b)-5(f) (7) of the Regulations under the Int. Rev. Code of 1954.

that, upon her death, the principal should be divided so that each Kelly son would receive 38.5% ; each of his four daughters would receive 5% ; and 3% would be divided among certain loyal employees. In default of the exercise of the power of appointment by the wife, the remaining principal in the marital trust is to be distributed as part of the "remainder" trust.

Kelly made it very clear that he wished to preserve the family businesses within the family, most particularly under the control of his executor and trustees during the lifetime of his wife, if she survived him, and following her death under the control of his sons and one daughter. His will provides that "[i]t is my desire that my Executors and Trustees shall continue all of the businesses carried on by me at my death, and that these businesses shall remain in the Kelly family." In the event of the sale of the stock of any family corporation, the will expresses an "earnest desire that my children shall be given every opportunity to purchase such stock at a fair price." On the question of the exercise of the power of appointment given to his wife, Kelly provided, "I earnestly recommend to, and request of, my said wife although I do not so require, that in exercising the power of appointment herein granted, she adopt the plan of distribution hereafter set forth in default of appointment." Other language is set forth in the margin manifesting Kelly's unmistakable confidence in his trustees and his fervent desire that the family businesses be carried on by the trustees, with advice from his sons, as if he were still alive and without disruption.[9] He specifically authorized

[9] *Article IV* — The executors and trustees are granted a variety of powers, including the power:

"(A) To continue, manage, operate and direct any businesses being carried on by me at the time of my death.

"(B) To participate actively in the management, operation and direction of any such business, receiving adequate compensation for services rendered. . . .

"(D) To control the said corporations; to cause or permit the said corporations to deal one with the other and with each other in any transactin or transactions, including buying and selling to and from each other, borrowing money from and loaning money to each other, entering into leases with each other and in general dealing

his executor and trustees to retain all securities and other property owned by him at the time of his death, "even though such securities or property may not produce any income or may be a wasting asset."

ADMINISTRATION OF THE ESTATE AND TRUST.

The executor has endeavored to sell the family corporations as a unit, with or without Brodie Mountain, but he has been unsuccessful. He believes that the sale of assets in the Kelly estate sufficient to fund the marital trust with other assets could at this time be made only at values substantially below the values of those assets reported for Federal estate tax purposes. The trustees plan to hold, as part of the corpus of the marital trust, shareholdings in the family corporations (or in the new merged corporation).[10]

---

with each other in such manner and to such extent as they may deem proper. It is my desire that they shall be, or be among, the directors of all of my corporations and that they shall vote the corporate stock held in trust by them for themselves as such directors, and in such manner and for such other corporate purposes as they shall deem proper. . . .

"(I) To invest and reinvest the trust fund in any property, real or personal, including without limitation, securities, stocks, bonds, mortgages, notes, any common trust fund and real estate . . .."

Article V, second paragraph — "Fully realizing the broad powers and discretion herein granted to my Executors and my Trustees, I wish them to carry on and conduct the said businesses as I would had I survived, and I deliberately and in full confidence, give them the broadest powers of action and inaction and widest discretion, so that they may in all respects deal with the said properties as I would were I alive and the absolute owner thereof."

Article VII — "Wherever my Trustees or my Executors are given any powers of discretion, or of judgment, the exercise by my Trustees or Executors of such powers shall, in the absence of fraud or bad faith, be final and binding upon all persons taking any interests hereunder."

Article XX (in part) — "I direct that . . . [my trustees] shall be governed by the following rules: So far as all decisions in connection with the operation of any businesses held by them in trust hereunder, they shall consult with my sons. The Trustees shall, after such consultation, have the right to take whatever action they may deem proper and in the best interest of my estate and my beneficiaries. I have great trust and confidence in my sons and it is my desire that my Trustees should carefully consider their advice and suggestions."

[10] The only property not passing under Kelly's will which qualified for the marital deduction was the Kellys' home, valued at $40,000 in the Federal estate tax return, which was jointly owned by the Kellys. The return does not show that the wife made any contribution toward the purchase of the home.

Mazzola *v.* Myers.

Using the proceeds of the sale of certain assets and funds borrowed from some of the family corporations, the estate has paid approximately $115,000 toward a Federal estate tax obligation (based on the return as filed) of approximately $586,000 (after a credit for State inheritance taxes of about $92,000). If the estate does qualify for the marital deduction, the Federal estate tax (based on values shown in the estate tax return) will be approximately $1,000,000 less than if the estate does not so qualify. Of the State inheritance tax obligation of about $175,000 on present interests, approximately $85,000 has been paid.[11]

No income of significance has been earned by the estate or the trust since Kelly's death. There has, therefore, been no significant income distributed to the plaintiff. The estate has made substantial funds available to the plaintiff by means of payments from family corporations. These payments have been recorded by the corporations as loans to the executor.[12]

### The Issues for Decision.

The circumstances present the dilemma that it may not be possible to comply both with Kelly's direction that the family enterprises be retained by his fiduciaries and with his direction that the marital trust qualify for the marital deduction.

The plaintiff argues that those provisions of Federal law which set forth the conditions which must exist in order to qualify the marital trust for the Federal marital

---

[11] Although various debts and expenses have been paid, the major administrative expenses of the estate, shown on the Federal return at $450,000, have not been met.

[12] In 1970, the plaintiff received almost $15,000 from the estate; in 1971, she received approximately $48,000; and in January, 1972, she received over $3,200. The record does not show what payments, if any, have been made to her since January, 1972. The payments to the plaintiff include the payment on her behalf of utility bills, mortgage obligations, medical expenses, the cost of new appliances and furniture, the cost of a new automobile, maintenance and operating expenses of her automobile, real estate taxes, Federal income taxes and miscellaneous other items.

deduction must be read into the powers and duties of Kelly's executor and trustees. She specifically claims that, although the provisions of the marital trust require income to be paid to the plaintiff, if the marital trust is funded with nonincome producing securities, the estate will not qualify for the marital deduction and that, because the overriding purpose of the Kelly will is to take advantage of the marital deduction, the executor and trustees must take steps to fund the marital trust with income producing assets. The fiduciaries, on the other hand, assert that they can comply with lawful Federal requirements by funding the marital trust with stock in the family corporations. They deny that a marital deduction trust must be funded with income producing assets. The fiduciaries contend further that if the choice must be made between preserving the family businesses or qualifying for the marital deduction, the intent of the testator is clearly in favor of preservation of the family enterprises.

The fiduciaries urge that this court not undertake to determine whether the wife's trust will qualify for the marital deduction. They argue correctly that the availability of the marital deduction is a matter to be decided under Federal tax law and that any determination of that issue by us would not be binding on the Federal tax authorities. They say that because a decree "would not terminate the uncertainty or controversy giving rise to the" proceeding (G. L. c. 231A, § 3), this court should decline to act on "[F]ederal questions raised by the . . . [plaintiff] in this case." We agree.

The plaintiff, however, is not seeking our determination of any Federal tax question. According to the case stated, she seeks a determination of her rights, and the duties and obligations of the executor and trustees, "with respect to her rights to income from the marital trust." The interpretation of Kelly's will is clearly a matter of State law upon which this court may properly make declarations (see *Old Colony Trust Co.* v. *Silliman,* 352 Mass. 6, 8), which, because the Internal Revenue Service

received notice and had an opportunity to be heard, will be binding on the Federal taxing authorities. *Commissioner of Int. Rev.* v. *Estate of Bosch,* 387 U. S. 456. *Worcester County Natl. Bank* v. *King,* 359 Mass. 231, 233.

We decline accordingly to pass judgment on the meaning of particular sections of the Internal Revenue Code or of regulations issued thereunder as they may apply to the Kelly estate. We will devote ourselves solely to questions of State law raised by the case stated and argued before us. These questions of State law principally require us to construe the Kelly will to determine the rights of the plaintiff to income from the marital trust, the appropriate funding of that trust, and the necessity of the estate qualifying for the marital deduction. Each of these questions is to be determined on the basis of Kelly's intention expressed in his will. "[T]he fundamental rule for the construction of wills is to ascertain the intention of the testator from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to him at the time of its execution and to give effect to that intent unless some positive rule of law forbids." *Fitts* v. *Powell,* 307 Mass. 449, 454. See *Boston Safe Deposit & Trust Co.* v. *Park,* 307 Mass. 255, 259; *New England Merchants Natl. Bank* v. *Koufman, ante,* 454, 458.

Although the plaintiff relies principally on the asserted obligation of the trustees to qualify the marital trust for the marital deduction, which to her means the trust must be funded with income producing assets, she contends as well that the trust law of this Commonwealth requires a similar result. We turn to that issue first.

THE REQUIREMENTS OF THE GENERAL TRUST LAW OF THE COMMONWEALTH.

Apart from any duties imposed on the fiduciaries by reason of an obligation to qualify the marital trust for the marital deduction, there is no requirement that the

assets of the marital trust be diversified or that they be income producing. If there is no contrary direction in a will, the general rule is that, in the exercise of reasonable and prudent discretion, trustees have an obligation to refrain from putting too much of the trust assets in one investment. *Davis, appellant,* 183 Mass. 499, 502. Scott, Trusts (3d ed.) § 228. Restatement 2d: Trusts, § 228. However, if there is a direction in the will to the contrary, if there is no reason to fear for the safety of the investment, and if there is no change in the circumstances which were known to the testator, a trustee is not obliged to sell trust assets in order to diversify the trust investments. *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158, 167. *First Natl. Bank* v. *Truesdale Hosp.* 288 Mass. 35, 45. See Scott, Trusts (3d ed.) §§ 227.14, 228; Bogert, Trusts and Trustees (2d ed.) §§ 612, 681, 683; Restatement 2d: Trusts, § 228. Cf. *Nelligan* v. *Long,* 320 Mass. 439, 446–447. Nor in the same circumstances is a trustee obliged to dispose of trust assets which are not income producing. See Scott, Trusts (3d ed.) § 240.1; Bogert, Trusts and Trustees (2d ed.) § 824; Restatement 2d: Trusts, § 240, esp. comment g. Cf. *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158, 167–168. "Thus where the property is specifically mentioned in the trust instrument, and particularly where it constitutes the whole of the trust estate, and where it is known to the settlor to be unproductive property at the time of the creation of the trust, the trustee is presumably under no duty to sell it." Scott, Trusts (3d ed.) § 240.1. These circumstances exist with respect to the Kelly estate.

Kelly clearly desired to retain the family corporations in the trusts created under his will and thereafter in his family. Provisions of his will unmistakably manifesting this intention are quoted earlier in this opinion (see particularly footnote 9 and the associated text). Knowing that the family corporations did not declare dividends to any significant degree, that under a loan agreement they could not declare dividends, and that accordingly there might be no trust income for his wife, Kelly gave

his trustees the right to make discretionary payments of principal to his wife in order to permit her to be maintained in an adequate and proper manner. He further provided that his fiduciaries might "retain all securities and other property owned by . . . [him] at . . . [his] death, even though such securities or property may not produce any income or may be a wasting asset." The conclusion is unavoidable that under the general trust law of the Commonwealth the marital trust may be funded with securities in Kelly family corporations.[13]

### THE OBLIGATION TO QUALIFY FOR THE MARITAL DEDUCTION.

The fiduciaries under Kelly's will have an obligation to fund or otherwise administer the marital trust so that it qualifies for the marital deduction under the Federal estate tax law. The provisions of Article XIII of the Kelly will are clear and unavoidable on this subject. That article states: "*Anything herein contained to the contrary notwithstanding,* no power or authority given to my Trustees or Executors shall be so broad as to prevent my estate from receiving full advantage of the federal estate tax marital deduction, and *any power or authority* herein granted which would so affect my estate *shall be restricted and limited to the extent required to preserve the said marital deduction*" (emphasis supplied). Although he may or may not have understood all the ramifications, it is clear that Kelly wanted to take advantage of the marital deduction. That desire is wholly understandable because his Federal estate tax will be approximately $1,000,000 less by reason of taking full advantage of the marital deduction. That saving is particularly significant in an estate largely populated with securities

---

[13] The anticipated consolidation of the family corporations into one corporation after Kelly's death does not make the provision in Kelly's will authorizing the retention of investments held at his death inapplicable to shares of stock in the new corporation. Cf. *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158; *Anderson* v. *Bean,* 272 Mass. 432, 440.

in closely held corporations which the testator wished to preserve for his family.

The fiduciaries contend that, if Kelly's desire to preserve the family enterprises conflicts with his desire to take advantage of the marital deduction, the will must be read to permit the preservation of those enterprises and the loss of the marital deduction. If there were no Article XIII in the Kelly will, the will might then be ambiguous on this point and we might consequently conclude that the record was deficient concerning circumstances known to Kelly which might aid us in resolving the conflict of directions in his will. See *Mahoney* v. *Grainger*, 283 Mass. 189, 192; *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 582. However, Article XIII clearly and unambiguously resolves any such conflict in favor of qualification for the marital deduction, at least to the extent that the powers of the fiduciaries must be restricted and limited so as to preserve the marital deduction.

Although it is not our function to prescribe the means by which the fiduciaries must exercise their discretion to qualify the marital trust for the marital deduction, we interpret Kelly's will to require that the marital trust be administered so as to qualify it for the marital deduction.[14] Whatever step or combination of steps the trus-

---

[14] Several alternatives seem to be available to the fiduciaries. Some of these alternatives may be more compatible with Kelly's expressed desire to preserve the family enterprises than others. One option clearly involves the funding of the marital trust with income producing securities. There is, however, apparently no requirement that a marital trust be funded with income producing assets, if some other method is available by which the surviving spouse obtains "the required beneficial enjoyment" of the property, "such as by payments to the spouse out of other assets of the trust." Reg. 20.2056(b)-5 (f) (5) of the Regulations under the Int. Rev. Code of 1954. If a trustee must make payments of principal in "proper" amounts to a spouse, a trust seemingly is not disqualified for the marital deduction. See Casner, Estate Planning, 1972 Supp. to Vol. I, p. 1334; Mertens, Law of Federal Gift & Estate Taxation, § 29.33, fn. 30 on p. 557; Rabkin & Johnson, Federal Income, Gift and Estate Taxation, § 53.06 (1), (3). We note that the plaintiff has received substantial payments of principal from the estate. We express no opinion, however, whether the principal amounts paid to the plaintiff, which were apparently free from Federal income tax, were sufficient under the Federal tax law to

tees may take, they have an obligation during the life of the plaintiff (and not simply until the Federal estate tax is determined) to administer the marital trust in a way which would be appropriate to qualify that trust for the marital deduction under the Federal estate tax law applicable to the Kelly estate. If the fiduciaries elect, in whole or in part, to qualify for the marital deduction by exercising their discretion to pay principal to the plaintiff, the fiduciaries' otherwise broad discretion must be "restricted and limited" by reason of Article XIII of Kelly's will so as to require payment of principal to the plaintiff in amounts sufficient to meet the marital deduction requirements of the Federal tax law. Powers granted to trustees, even very broad discretionary powers, are always subject to the control of a court of equity to assure that in the exercise of those powers the purposes of the trust are fulfilled. *Copp* v. *Worcester County Natl. Bank,* 347 Mass. 548, 551. *Boston Safe Deposit & Trust Co.* v. *Stone,* 348 Mass. 345, 351.

We believe that, where possible, the powers and duties of fiduciaries should be interpreted to conform in appropriate respects to the requirements of the Federal tax law, when a testator expresses the intention that his estate qualify for some benefit under the Federal tax law. See *Old Colony Trust Co.* v. *Board of Governors of Belleville Gen. Hosp.* 355 Mass. 776, 780; *Worcester County Natl. Bank* v. *King,* 359 Mass. 231. We would be reluctant to reach a conclusion that a testator intended to enrich the taxing authorities at the expense of mem-

qualify the marital trust for the marital deduction. Nor, of course, do we comment on the fiduciaries' argument that certain regulations under the Internal Revenue Code are invalid.

The fiduciaries constitute a majority of the directors of the various family corporations and will control the selection of the directors of the new corporation into which those family corporations are to be (or have by now been) merged. Admittedly Kelly desired that his fiduciaries be directors of the family corporations. However, depending on the alternative or alternatives selected to comply with the marital deduction, the duties of the fiduciaries may be so divergent, or perhaps even inconsistent, that they should conclude that they should not serve as directors of the new corporation.

bers of his own family. *Strange* v. *Powers,* 358 Mass. 126, 133.

### THE IN TERROREM CLAUSE.

There is no merit to the fiduciaries' contention that the plaintiff has forfeited her interest under Kelly's will because she commenced this proceeding. Article VIII of Kelly's will [15] provides that a beneficiary shall be conclusively presumed to have predeceased him, if that beneficiary shall "take any action to attack or challenge this will, or any provision thereof." The short and complete answer is that, in seeking an interpretation of the will, the plaintiff has not attacked or challenged the will or any part of it.

### CONCLUSION.

The plaintiff and the defendant Bilodeau are entitled to the costs of this appeal payable from the principal of the marital trust. G. L. c. 231A, § 7. The matters of compensation and expenses of counsel may be determined by the Probate Court upon application under G. L. c. 215, § 39A.

A final decree is to be entered in conformity with this opinion.

*So ordered.*

---

[15] Article VIII reads: "If any beneficiary hereunder shall, in any court of law or probate, take any action to attack or challenge this will, or any provision thereof, that person shall be conclusively deemed to have predeceased me, without issue surviving. This provision, however, shall not be construed as in any way affecting any action by my Trustees or my Executors to obtain instructions as to their duties and responsibilities hereunder."