ROBERT G. NAUGHTON, executor, *vs.* THE FIRST NATIONAL BANK OF BOSTON & another, trustees.

Suffolk.    January 16, 1976. — November 10, 1976.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Probate Court,* Revocation of decree, Accounts.    *Res Judicata.    Trust,* Trustee's discretion, Trustee's accounts.

Where trustees had refused to pay the medical expenses of a life beneficiary's last illness as requested by her executor after her death and where the executor made a timely claim of appeal from a decree al-

lowing the trustees' accounts as submitted and requested a report of material facts which the trial judge failed to prepare prior to his resignation from the judiciary, a second probate judge's finding that the facts presented a meritorious case for which the executor was justified in seeking appellate review warranted his vacating the decree. [626-627]

A judgment against an executor of a life beneficiary's estate in an action of contract against the trustees for their refusal to pay medical expenses incurred by the beneficiary prior to her death did not preclude the executors from raising their claim in a probate proceeding on the trustees' accounts. [627-628]

A probate judge's finding that the executor of a life beneficiary's estate had, through no fault of his own, lost his right to appeal from a decree allowing the trustees' accounts warranted his vacating the decree. [628-629]

PETITION for revocation of a decree filed in the Probate Court for the county of Suffolk on August 10, 1972.

The case was heard by *Ford, J.*

The case was submitted on briefs.

*David C. Hawkins* for The First National Bank of Boston & another, trustees.

*Edward C. Hamaty* for Robert G. Naughton, executor.

GOODMAN, J.   Julius J. Hadley died testate on October 17, 1961; the residuary clause of his will, the application of which is in dispute, is set out in the margin.[1] Esther

---

[1] "All the rest, residue and remainder of my estate is to be held in trust by the . . . [trustees] for the following purposes:

"(a) To pay to my Aunt, Esther M. Waterbury, of Boston, Massachusetts, the sum of One hundred and no/100 (100.00) Dollars a month for life, with full power in the Trustees, in the event of an emergency, to use a portion of the principal which, in their discretion, [s]hould be necessary for her comfort and support, consistent with her standard of living for the past five years.

"(b) To pay to Jeanette Libbey Whelan the sum of Fifty and no/100 (50.00) Dollars per month for life, but in the event that the said Jeanette Libbey Whelan remarries, this gift is to terminate.

"(c) Upon the death of Jeanette Libbey Whelan, to pay to Conrad S. Shumway, the sum of Fifty and no/100 (50.00) Dollars per month for life.

"*Ninth:* Upon the death of the survivor of the above-mentioned trust, said trust is to terminate. Upon termination of said trust, all assets of said estate are to be paid over to Massachusetts General Hospital to establish a fund in honor of my Mother . . . to be known as the Carrie Morrill Hadley Fund. Said fund is to be used for the benefit of needy widows with children."

M. Waterbury died testate on December 1, 1967. The executor of her will (executor) requested that the trustees under Hadley's will (trustees) pay the medical expenses of her last illness which the executor submitted to the trustees after her death. They refused, and the executor, by writ dated November 26, 1969, brought an action of contract in the Municipal Court of the City of Boston against the trustees seeking to recover those medical expenses in the sum of $4,633.93 and alleging in his declaration the trust relationship under Hadley's will. The trustees removed the action to the Superior Court and filed a demurrer, which was sustained with leave to amend. No attempt was made to amend the declaration, and judgment was entered for the defendant trustees on February 2, 1970.

The executor thereafter contested the allowance of the trustees' accounts on the ground that they should have paid those medical expenses.[2] A decree was entered on March 18, 1970, allowing the accounts as submitted by the trustees; the executor filed a timely claim of appeal and a request for a report of material facts. No such report of material facts was ever prepared; the trial judge resigned from the judiciary on September 15, 1971. On August 10, 1972, the executor filed a petition to vacate the decree allowing the accounts. On October 15, 1974, a probate judge vacated that decree; the trustees appealed and requested a report of material facts which the probate judge made and which we will discuss in connection with the trustees' various contentions.

1. The trustees argue that the executor's claim to reimbursement has no merit. But the probate judge stated that "[t]he question as to whether the trustees reasonably exercised th[eir] discretion [in refusing to pay those medical bills] was not before me." And we agree with him "that the facts do present a meritorious case for which the

---

[2] No question has been raised that the executor's objection to the allowance of the accounts was not a proper method to assert his claim to reimbursement.

petitioner was justified in seeking appellate review." A meritorious case is one "worthy of judicial inquiry." *Lovell* v. *Lovell*, 276 Mass. 10, 11-12 (1931). It need not be "one which is sure of success." *Medford Red Cab, Inc.* v. *Duncan*, 341 Mass. 708, 709-710 (1961). That the beneficiary died before those medical expenses incurred during her last illness were paid (other medical expenses had been paid previously) does not make her claim insubstantial as matter of law. Discretion to pay such bills has been upheld in *Leverett* v. *Barnwell*, 214 Mass. 105, 108 (1913). See *Perry* v. *Hall*, 32 R.I. 299, 300, 306 (1911). "[A]nd where it would be an abuse of discretion not to pay them, the trustee can be compelled to pay them." Scott, Trusts, § 128.4, at 1027 (3d ed. 1967), citing *Pole* v. *Pietsch*, 61 Md. 570 (1884), *Matter of Frayer*, 155 Misc. 811 (Surr. Ct. 1935), aff'd. 246 App. Div. 703 (N.Y. 1935). See *In Re Gatehouse's Will*, 127 N.Y.S.2d 697 (1953), citing *Matter of Van Zandt's Will*, 231 App. Div. 381 (N.Y. 1931); *Estate of Mullins*, 190 Cal. App. 2d 413, 418 (1961), citing the second edition of Scott, Trusts, § 128.4 (1956). See also *Will of Hafemann*, 265 Wis. 641, 642-643, 647 (1954). Cf. *In Re Thompson*, 104 N.J. Super. 324, 328-329 (1969). The trustees' discretion not to pay the claim is thus reviewable to ascertain whether they have been "plainly wrong." *Woodberry* v. *Bunker*, 359 Mass. 239, 242-243 (1971) (pointing out that "most trust instruments will reveal a '*judicially enforceable, external, and ascertainable standard*' for the exercise of even broadly expressed fiduciary powers" [at 241] [emphasis in text]). The matter is, in the first instance, for the probate judge to determine on all the relevant facts in the light of the testator's intent as gleaned from the entire will viewed against the circumstances known to the testator at its execution. See *Old Colony Trust Co.* v. *Rodd*, 356 Mass. 584, 588-589 (1970); *Mazzola* v. *Myers*, 363 Mass. 625, 634 (1973).

2. The trustees also argue that the judgment in the executor's action of contract in the Superior Court (the law action) is a bar to the executor's claim in the probate

proceedings on the trustees' accounts. They point to the
rule which gave that effect to a judgment where the de-
fendant's demurrer had been sustained and the plaintiff
had been given leave to amend but had refused or ne-
glected to do so. *Elfman* v. *Glaser,* 313 Mass. 370 (1943).
See *Osserman* v. *Jacobs,* 369 Mass. 200, 203 (1975).[3]

But the judgment in the law action did not have pre-
clusive effect, for the court in that action could not have
granted the relief sought by the beneficiary's executor
against the trustees. (Indeed, this seems to have been the
main thrust of the trustees' demurrer, cf. *Hacker* v. *Beck,*
325 Mass. 594, 598 [1950].) See Restatement: Judgments,
§ 65(2), comment i (1942). Compare *Levinton* v. *Poorvu,*
293 Mass. 338, 345-346 (1936); *Spector* v. *Loreck,* 342
Mass. 685, 687, 688 (1961).

3. The trustees invoke the paragraph of G. L. c. 206,
§ 24, which provides: — "After a final decree has been en-
tered on any accounts hereunder it shall not be impeached
except for fraud or manifest error." That argument over-
looks the principle "that a probate decree may be revoked
or modified on petition for any reason that would warrant
a bill of review in equity ...." *Agricultural Natl. Bank*
v. *Bernard,* 338 Mass. 54, 57 (1958). See discussion in
*O'Brien* v. *Dwight,* 363 Mass. 256, 286-289 (1973). In
*Brooks* v. *National Shawmut Bank,* 323 Mass. 677, 681
(1949), the court held that one such reason to revoke a
decree was the abridgment of appellate rights resulting
from the death of a stenographer designated to report
testimony; in the circumstances this made it impossible
for the appellant to include a transcript of testimony as
part of the record and confined him to review on a report
of material facts. The court supported this conclusion
with "[t]he rule ... well settled both in this country and
in England that where a party, without fault on his part,
loses the benefit of his exceptions through the death, ill-
ness or resignation of a judge a new trial will be granted

---

[3] As in the *Osserman* case we treat the judgment in the law action
without reference to the new rules of civil procedure.

[citing cases]." Here the probate judge found that the executor "did all that he reasonably could under the circumstances." And we cannot say that such remedies as may have been open to him were so sure or so swift as to vitiate that finding as a matter of law. See Newhall, Settlement of Estates, § 293, at 273-274 (4th ed. 1958). We thus conclude that the probate judge properly granted the petition. See *Delzenero* v. *Berube,* 2 Mass. App. Ct. 353 (1974).[4]

*Decree affirmed.*

---

[4] Neither the trustees nor the executor has referred to the new rules of civil procedure though the order vacating the original decree was entered on October 15, 1974. We find it unnecessary to decide the extent to which, if any, the new rules are made applicable to proceedings for allowance of accounts by virtue of G. L. c. 206, § 4, and Mass.R.Civ.P. 1, 365 Mass. 730 (1974) — a subject about which there has been much debate by the bar. Under Mass.R.Civ.P. 60(b), 365 Mass. 828, 829 (1974), we would reach the same result: that the trial judge is empowered to vacate a judgment to protect appellate rights from abridgement in the circumstances of this case. Wright & Miller, Federal Practice and Procedure, § 2864, at 215 (1973). See *Smith* v. *Jackson Tool & Die, Inc.* 426 F.2d 5, 7-8 (5th Cir. 1970); *Expeditions Unlimited Aquatic Enterprises, Inc.* v. *Smithsonian Inst.* 500 F.2d 808, 809-810 (D.C. Cir. 1974). See also *Klapprott* v. *United States,* 335 U.S. 601 (1949).

Similarly, we need not determine whether the new rules govern the appealability of that decree. It is appealable apart from the new rules. *Waitt* v. *Harvey,* 312 Mass. 384, 392, 393 (1942). *Theberge* v. *Howe,* 314 Mass. 22, 23 (1943). And if we treat it as a judgment in an "independent action" under rule 60(b) it is also appealable. Wright & Miller, Federal Practice and Procedure, § 2871, at 261 (1973).

We have used pre-July 1, 1974, nomenclature throughout without intending any indication as to the applicability of the new rules.