RUTH W. STRANGE, conservator, *vs.* H. BURTON POWERS, guardian ad litem.

Suffolk.    May 4, 1970. — July 3, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Incompetent Person. Gift. Guardian,* Estate plan. *Conservator. Constitutional Law,* Delegation of powers, Separation of powers, Due process of law.

G. L. c. 201, § 38, as amended by St. 1969, c. 422, empowering the Probate Courts to authorize a conservator or guardian to apply such funds of his ward as are not required for the ward's own maintenance and support towards the establishment of an estate plan, is not unconstitutional on alleged grounds of vagueness or uncertainty or nonexistence of "reasonable safeguards against its abuse," or as a delegation of legislative authority to the Probate Courts, or as a deprivation of property without due process of law. [133–135]

G. L. c. 201, § 38, as amended by St. 1969, c. 422, permitting gifts from surplus funds in the estate of a conservator's or guardian's ward, in furtherance of an estate plan and upon authorization of the Probate Court, to such persons "as would be likely recipients of donations from the ward," permits the conservator or guardian to be a recipient even though there is no specific provision therefor in the statute. [136]

PETITION filed in the Probate Court for the county of Suffolk on October 3, 1969.

Questions of law were reserved and reported by *Keville,* J.

*Robert L. Halfyard* for the conservator.

*H. Burton Powers,* guardian ad litem, pro se.

*James B. Ames,* amicus curiae, submitted a brief.

WILKINS, C. J.   This is a petition in the Probate Court, Suffolk County, by the conservator of the estate of Gerda J. Williams for permission to make gifts of the ward's property in the amount of $33,000 to herself, who is the ward's daughter, and the amounts of $3,000 each to the conservator's two daughters and four grandchildren.   General Laws c. 201, § 38, as amended by St. 1969, c. 422, which became effective September 15, 1969, is set forth in full in Appendix A.

We summarize the allegations of the petition.   The petitioner is the ward's heir presumptive.   The ward's annual income has for some years been in excess of $50,000.   She "is in an approximate fifty-five per cent federal income tax bracket," and has a total estate of a present market value of approximately $1,200,000.   She annually has excess funds not required for her maintenance and support.   State and Federal income taxes as well as estate and inheritance taxes will be reduced if the ward is permitted to establish an estate plan consisting of annual distributions of at least $3,000 each to her daughter, her two granddaughters, and her four great grandchildren.   The ward also should be permitted to take advantage of the lifetime gift tax exemption of $30,000 by distributing that sum to her daughter at the present time.   The distribution of these sums to the heirs apparent and the likely beneficiaries of the ward's estate will reduce the size of the estate and the annual income therefrom and serve to spread at least a small fractional part of the estate equally among her descendants.   This proposed plan of distribution is a normal and minimum estate plan for estates of the size of the ward's, and is fully consistent with the intentions of the ward in so far as they can be ascertained. If it were not for the circumstances of the ward's advanced age and mental condition, her own counsel would undoubtedly be advocating establishment of a similar estate plan.   It is in the best interests of the handling of the ward's property that this petition be granted.

The guardian ad litem filed a report stating that as far as can be ascertained this was the first proceeding under c. 422;   that after consideration it was his conclusion that

c. 422 is repugnant to art. 12 of the Declaration of Rights of the Constitution of the Commonwealth and to § 1 of the Fourteenth Amendment to the Constitution of the United States, being a deprivation of property without due process of law; and that c. 422 furnishes an undefined, vague, and uncertain standard for its application, in effect delegating legislative powers to courts contrary to art. 30 of the Declaration of Rights. If c. 422 is held to be constitutional, the guardian ad litem's opinion is that the petition may properly be allowed as to all gifts except that to the conservator herself, the statute not specifically providing that the said fiduciary may be a recipient.

There was a statement of agreed facts, which we summarize. The allegations of fact in the conservator's petition are correct. The ward is approximately eighty-seven years of age, a widow having one child, namely, a married daughter (the conservator), two married granddaughters, and four minor great grandchildren not under guardianship, none of whom is or in the past has been dependent on her. The conservator's petition for appointment was for advanced age, and was not assented to by the ward. She has no debts except the usual current living expenses and the cost of her maintenance in her own house in Boston with a staff of four to five persons. She is living in the manner to which she has been accustomed throughout her life and with which she is content. The proposed gifts would be free of gift or other taxes. State and Federal taxes to be anticipated upon the decease of the ward fall in approximately the ten per cent bracket for the former and the thirty-two per cent bracket for the latter, or an approximate total of forty-two per cent.

The case is here, pursuant to G. L. c. 215, § 13, on a reservation and report of three questions of law:

"(1) Is chapter 422 of the Acts and Resolves of 1969 an unconstitutional deprivation of property without due process of law, contrary to the provisions of the Fourteenth Amendment, section one, United States Constitution, and to Article XII of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts?

"(2) Is chapter 422 of the Acts and Resolves of 1969 an unconstitutional delegation of legislative powers to the Probate Courts by reason of its undefined, vague and uncertain standards, contrary to Article XXX of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts?

"(3) If chapter 422 of the Acts and Resolves of 1969 is constitutional as enacted, does it permit the guardian or conservator to be a recipient of the distributions therein provided for, in the absence of an express provision so authorizing?"

The precise questions before us previously have not been raised in this Commonwealth, but have been involved in judicial decisions elsewhere. Of immediate pertinence in this Commonwealth, however, are powers hitherto conferred by the Legislature upon the Probate Court, the tribunal which has been given the jurisdiction to appoint guardians and conservators. G. L. c. 201, §§ 1, 5, 6, 16, 34. See *Richards* v. *Forrest*, 278 Mass. 547; *Buckingham* v. *Alden*, 315 Mass. 383.

Other powers hitherto conferred by the Legislature upon the Probate Court are most significant. For example, the Probate Court specifically has been authorized to apply to the maintenance and education of the children of a mentally ill person "such portion as the court orders of the estate" of such person "which is not required for his maintenance and support." G. L. c. 201, § 42, as appearing in St. 1956, c. 314, § 13. The Probate Court also specifically has been authorized "to expend funds from the ward's estate for or towards the funeral and burial expenses of a deceased member of the ward's family." G. L. c. 201, § 38A, inserted by St. 1958, c. 44. See *Matter of Morizzo*, 335 Mass. 251.

In other jurisdictions gift transactions of the sort authorized by c. 422 have been permitted. It is appropriate to observe what is the law of England. The early English decisions are carefully summarized in an article in 8 Harv. L. Rev. 472 (1895) entitled, "The Surplus Income of a Lunatic," by William G. Thompson, Esquire, and Richard W.

Hale, Esquire, both later well known at the Massachusetts bar. The question there considered is stated to be the disposition to be made of the lunatic's surplus income which is remaining after every reasonable and proper expenditure has been made for his care and comfort (p. 473). After announcing that there are only a few reported cases in English jurisdictions, and scarcely any in the United States,[1] the authors state, "In emphasizing one proposition all the authorities are agreed. That proposition is, that before any portion of his income can be devoted to other purposes, the ward himself must be provided with every comfort that he requires or to which he has been accustomed. There must be no economizing for the purpose of making an allowance to needy relatives, or in order to save something for the next of kin." In support of the last sentence the authors cite the remarks of Lord Eldon in *Oxenden* v. *Lord Compton*, [1793] 2 Ves. Jr. 69, and in *Ex parte Whitbread*, [1816] 2 Meriv. 99, and of Ames, J. in *May* v. *May*, 109 Mass. 252, 256 (1872). The authors then continue, "But when the ward has been liberally provided for, if there is still a surplus of income, allowances may, under certain circumstances, be made to the lunatic's relatives and to certain other persons. . . . The only principle that can produce coherency or consistency in making such allowances is the principle laid down by Lord Eldon, in *Ex parte Whitbread*, 2 Mer. 99. . . . [T]hat principle, it is submitted, is this. Where there is no evidence of any settled intention of the lunatic before his insanity in regard to the matter, or of any intention formed during his rational moments, the court will presume that were the lunatic sane he would act in the matter as any reasonable and ordinarily generous man would act under the same circumstances" (p. 473). Later English cases extended the power. *In re Earl of Carysfort*, [1840] 1 Cr. & Ph. 76. *In re Whitaker*, [1889] L. R. 42 Ch. D. 119.

Foremost among the cases in this country is *Estate of Christiansen*, 248 Cal. App. 2d 398 (1967), where the guardian, a son of the incompetent, filed in the Superior

---

[1] As noted below there are now a number of such cases in the United States.

Court a petition for authorization to make annual gifts from the insane ward's estate of $3,000 over a period of three years to each of three children and seven grandchildren of the ward, who was a widow seventy-three years of age (p. 403). There was testimony (p. 405) that the estate and inheritance taxes would approximate $78,000; and that if $30,000 were given away as proposed, and the incompetent lived three years, there would be a tax saving of $10,000 or $11,000. The trial court denied the petition to distribute from principal. On appeal the Court of Appeals reversed and sent the case back for a new trial stating (p. 424), "It is concluded that the courts of this state, in probate proceedings for the administration of the estates of insane or incompetent persons, have power and authority to determine whether to authorize transfers of the property of the incompetent for the purpose of avoiding unnecessary estate or inheritance taxes or expenses of administration, and to authorize such action where it appears from all the circumstances that the ward, if sane, as a reasonably prudent man, would so plan his estate, there being no substantial evidence of a contrary intent." At p. 426, it was said, "It has been asserted . . . that establishment of this authorization will lead to looting of the estates of incompetents under the guise of tax saving. Such a contention uncharitably and erroneously assumes that the courts will not properly exercise discretion to protect the paramount interest of the ward. There is no more reason to fear the application of this principle than there is to fear that conferring discretion on a trustee to use principal for the life tenant, when needed, will lead to looting of a trust." At p. 423, there is one of the few references to constitutional objections to be found in the cases, "The ghost of constitutional violation is exorcised by established precedents, and by the existence of general equitable powers of the court to do what is best for the ward's interest. The narrow view set forth in *Hilton* v. *Odell-Arney* (1954) 72 Wyo. 389 . . . is rejected."

In *In re DuPont*, 41 Del. Ch. 300 (1964), the guardians of the ward, who was eighty-six years of age, were authorized

to distribute certain assets to the ward's children and grand-children by way of an inter vivos trust. The court said, at p. 303, "It appears that the requested transfer, if authorized, would provide the children and grandchildren with a much greater benefit from the ward's assets than would be the case if all the assets were to pass under the ward's will." In estate taxes this saving would be at least $16,100,000. The court acted on the principle "first announced by Lord Eldon in *Ex parte Whitbread*, 2 Mer. 99," and subsequent English cases following that principle (pp. 309–310).

In *In re Kenan*, 261 N. C. 1, *S. C.* 262 N. C. 627 (1964), Mrs. Kenan was a widow, eighty-eight years of age with no dependents; her property had a value of $52,000,000 in 1955; she was incompetent to manage her affairs; her income was over $4,000,000 before taxes in 1964; trustees under a trust she created were authorized to make gifts and to surrender her power of revocation. On appeal it was argued that this rewrote the contract she had made when competent. At p. 637, the court said, "Appellants mis-apprehend what authority the trustee seeks to exercise. He merely seeks court authority to do those things which Mrs. Kenan, if competent, could, and probably would, do. If she, when competent, could donate to charities the income reserved for her life, then the court, acting for her and in her behalf, could do what she would do, and, of course, if the court, acting for her and in her behalf, could give the income because she would give it, it could authorize the surrender of the right to revoke because she would have authorized it. The court's decree in no way impairs any contractual right which Mrs. Kenan has. It merely acts for and in her behalf."

In *Monds* v. *Dugger*, 176 Tenn. 550, 556 (1940), it was said, "Since in a case of this sort the court acts in the in-competent's stead, an appropriation of the incompetent's estate is equivalent to a voluntary appropriation of that estate by a person of sound mind. Such an appropriation, as though voluntary, is not a taking of property contrary to the constitutional provisions named."

We agree with the modern trend of cases both in England and in the United States. There is no reason why an individual, simply because he happens to be a ward, should be deprived of the privilege of making an intelligent common sense decision in the area of estate planning, and in that way forced into favoring the taxing authorities over the best interests of his estate. As was said in *Estate of Christiansen*, 248 Cal. App. 2d 398, 423, *supra,* "To refuse to permit the management of the incompetent's estate in the manner that a reasonable and prudent man would manage his estate may, in many cases, lead to the improbable conclusion that it was the intent of the incompetent to enrich the taxing authorities rather than the natural or declared objects of his bounty."

Certain arguments of the guardian ad litem remain to be discussed. The guardian ad litem asserts that c. 422 is unconstitutional because of vagueness and uncertainty and because "reasonable safeguards against its abuse are nonexistent." This contention fails to carry conviction because an integral part of it is the assertion that the act authorizes the making of wills, including the wills of minors. Cf. G. L. c. 191, § 1. The argument that wills are authorized by c. 422 is based on an unduly broad construction of the term "estate plan." His remaining arguments do not adequately live up to his broad contentions. Among such arguments are these:

(1) The grounds of contest of wills allegedly made pursuant to c. 422, an assumption we have seen to be contrary to fact.

(2) The means of revocation or modification of instruments, including wills, "during such twelve month period." This is a reference to the last paragraph of c. 422, which reads, "The order of the court upon each such application shall be for a period of not longer than the ensuing twelve months, but similar applications in subsequent years may be permitted for a further twelve month period without further notice in the court's discretion." The phrase, "without further notice," is said to render "ambiguous" whether "such a will or trust instrument of the estate plan is valid for only the following twelve months, requiring

periodic renewal by petition, or whether such will or trust instrument is valid until the ward attains or regains his competence and revokes it." We think that the criticized phrase was provided for the purpose of eliminating proceedings, wasteful of time, for renewal of appointments or other orders.

(3) The formalities of execution, if any, of instruments which are creatures of the court's decree are wholly unspecified. As this act does not apply to wills, we need not discuss them. The formalities of execution of a trust or other instrument may safely be left to the Probate Court.

(4) Irreconcilability of c. 422 with the concept of fiduciary conduct in the administration of a ward's estate. The guardian ad litem's brief quotes from G. L. c. 201, § 38, as defining that concept in a manner inconsistent with c. 422. Section 38 in its form prior to the enactment of c. 422 is, after all, only a statute, and not a part of the Constitution. We must have confidence in the Probate Court to administer c. 422 in accordance with the construction given it by this court in cases as they arise.

(5) Chapter 422 permits gifts "to such charities, relatives and friends as would be likely recipients of donations from the ward." These "words [are] wholly undefined." Here again one must have confidence in the Probate Court.

(6) Chapter 422 is an unconstitutional delegation of legislative authority to the Probate Court in violation of art. 30 of the Declaration of Rights. No authority is cited. No legislative powers have been delegated. The powers to which vague reference is made are powers judicial in nature which the Probate Court is well equipped to administer and resemble other powers conferred upon it as noted elsewhere in this opinion. See *Chase* v. *Chase*, 216 Mass. 394, 397.

There is a great difference between the case at bar and *Pedlosky* v. *Massachusetts Inst. of Technology*, 352 Mass. 127. In the latter case we pointed out (p. 129) that "the courts are exposed to the very real possibility of being asked to determine the degree of skill and faithfulness with which

the plaintiff discharges the duties of his private position in teaching mathematics and perhaps to compare that degree with that of the best of his ability."

The subject of c. 422 is one particularly within the experience and competence of the Probate Court, which may properly be depended upon to handle the various questions which may come before it without detailed provision in c. 422.

The guardian ad litem's report declares that c. 422 is a deprivation of property without due process of law. We are of opinion that the statute which authorizes action by the Probate Court cannot have such effect. The important matter is action under the statute. Due process requires notice and opportunity to be heard. In his brief the guardian ad litem charges that c. 422 "provides a procedure which does not conform to due process in respect to notice, opportunity to be heard and protection of the rights of incompetents and persons unborn or unascertained." The statute provides that the Probate Court shall give "such notice to all other persons interested as it directs." This resembles Rule 8 of the Rules of the Probate Courts (1959), as approved by the Justices of this court, which reads, "If a notice, given in accordance with the forms approved as provided by G. L. c. 215, § 30, or otherwise, is held by the judge to be insufficient, he may order such further notice as the case requires." The effect of a failure to give notice which the courts deem adequate is that the action taken will not become binding on the party affected.

In *Mullane* v. *Central Hanover Bank & Trust Co.* 339 U. S. 306 (1950), notice by publication to beneficiaries in common trust funds was held inadequate. At p. 314, it was said, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . . The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reason-

able time for those interested to make their appearance
. . . . But if with due regard for the practicalities and
peculiarities of the case these conditions are reasonably met,
the constitutional requirements are satisfied."

We do not accept the contention that c. 422 does not permit a guardian or conservator to be the recipient of distributions. The act permits distributions to persons as would be
"likely recipients of donations from the ward." The Probate
Court has broad statutory powers to appoint guardians ad
litem for the protection of individuals and their rights to
property. See G. L. c. 201, § 34, which is "declaratory of
the inherent powers of the courts necessary for the administration of their jurisdiction; it is not mandatory." *Chase* v.
*Chase*, 216 Mass. 394, 397. *Ryan* v. *Cashman*, 327 Mass. 677,
680. This is another instance where the discretion of the
Probate Court may safely be trusted.

We answer the questions as follows:

Question 1, No.
"       2, No.
"       3, Yes.

*So ordered.*

### APPENDIX A.

"Section 38. He shall manage the estate of his ward frugally and without
waste, and shall, except as otherwise provided, apply the same, so far as may
be necessary, to the comfortable and suitable maintenance and support of the
ward and his family. If the income and profits are insufficient for that purpose,
he may sell the real estate upon obtaining a license therefor, and shall apply
the proceeds of such sale, so far as may be necessary, for the maintenance and
support of the ward and his family. Such license and the application therefor
shall state whether the ward is married or single.

"The probate court, upon the application of a conservator or guardian, and
after such notice to all other persons interested as it directs, may authorize
such conservator or guardian to apply such funds as are not required for the
ward's own maintenance and support towards the establishment of an estate
plan for the purpose of minimizing current or prospective state or federal income, estate and inheritance taxes in the ward's estate or for gifts to such
charities, relatives and friends as would be likely recipients of donations from
the ward.

"The conservator or guardian in his application shall briefly outline the
proposed estate plan, what it may accomplish and the likely tax savings to
accrue. The plan may include gifts of the ward's personal property or real

estate, but transfers of real estate shall be subject to the requirements of chapter two hundred and two. Gifts may be for the benefit of prospective legatees, devisees or heirs apparent of the ward or may be made to individuals or charities in which the ward is believed to have an interest. The conservator or guardian shall also indicate in the application that any planned disposition is consistent with the intentions of the ward insofar as they can be ascertained, and if the ward's intentions cannot be ascertained, the ward will be presumed to favor reduction in the incidence of the various forms of taxation and the partial distribution of his estate as herein provided. The conservator or guardian shall not, however, be required to include as a beneficiary any person whom he has reason to believe would be excluded by the ward.

"The order of the court upon each such application shall be for a period of not longer than the ensuing twelve months, but similar applications in subsequent years may be permitted for a further twelve month period without further notice, in the court's discretion."