IN THE MATTER OF WANDA W. JONES.

Middlesex. November 6, 1979. — February 19, 1980.

Present: QUIRICO, BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Incompetent Person. Conservator,* Estate plan. *Due Process of Law,* Notice. *Notice. Attorney General.*

Although G. L. c. 201, § 38, does not empower a conservator to execute a will on behalf of his ward, the statute permits a conservator, upon authorization of a Probate Court, to create inter vivos trusts specifying the ultimate distribution of trust assets to other than the estate of the ward. [833-835]

Notice by publication to unascertained heirs in a proceeding under G. L. c. 201, § 38, was constitutionally adequate where the conservator had no actual knowledge of the existence of any heirs or any information which might have led to the discovery of kindred of the ward and where the interests of persons unborn and unascertained were represented by a guardian ad litem. [835-838]

In a proceeding under G. L. c. 201, § 38, by a conservator seeking approval of an estate plan under which his ward's property would ultimately be distributed to certain charities, thus preventing the likelihood that the ward's estate would pass by escheat to the Commonwealth, there was no conflict in the Attorney General's duty to represent the interests of the Commonwealth and his duty to represent the interests of public charities. [838]

Evidence in a proceeding by a conservator for approval of an estate plan for his ward under G. L. c. 201, § 38, was sufficient to warrant a finding that the estate plan was "in keeping with the ward's wishes." [839-840]

PETITION filed in the Middlesex Division of the Probate and Family Court Department on May 16, 1979.

The case was reported to the Appeals Court by *McGovern,* J. The Supreme Judicial Court, on its own initiative, ordered direct review.

*Louis H. Hamel, Jr.,* for the conservator.

*Carol G. Fubini,* Assistant Attorney General, for the Attorney General.

In the Matter of Jones.

*Karin Blake,* guardian ad litem, for the ward.

*Paul B. Sargent,* guardian ad litem, for persons unborn and unascertained.

ABRAMS, J.  This case is before us on the reservation and report by a Probate Court judge of certain questions of law arising from a petition by a conservator for approval of an estate plan for his ward under G. L. c. 201, § 38.[1]  The Pro-

[1] General Laws c. 201, § 38, as amended through St. 1976, c. 515, §§ 25-26, reads as follows: "He shall manage the estate of his ward frugally and without waste, and shall, except as otherwise provided, apply the same, so far as may be necessary to the comfortable and suitable maintenance and support of the ward and his family.  If the income and profits are insufficient for that purpose, he may sell the real estate upon obtaining a license therefor, and shall apply the proceeds of such sale, so far as may be necessary, for the maintenance and support of the ward and his family. Such license and the application therefor shall state whether the ward is married or single.  He shall have custody of all wills, codicils, and other instruments purporting to be testamentary dispositions executed by his ward.

"The probate court, upon the petition of a conservator or guardian, other than the guardian of a minor, and after such notice to all other persons interested as it directs, may authorize such conservator or guardian to take such action, or to apply such funds as are not required for the ward's own maintenance and support, in such fashion as the court shall approve as being in keeping with the ward's wishes so far as they can be ascertained and as designed to minimize insofar as possible current or prospective state or federal income, estate and inheritance taxes, and to provide for gifts to such charities, relatives and friends as would be likely recipients of donations from the ward.

"Such action or application of funds may include but shall not be limited to the making of gifts, to the conveyance or release of the ward's contingent and expectant interests in property including marital property rights and any right of survivorship incident to joint tenancy or tenancy by the entirety, to the exercise or release of his powers as donee of a power of appointment, the making of contracts, the creation of revocable or irrevocable trusts of property of the ward's estate which may extend beyond his disability or life, the exercise of options of the ward to purchase securities or other property, the exercise of his rights to elect options and to change beneficiaries under insurance and annuity policies, and the surrendering of policies for their cash value, the exercise of his right to an elective share in the estate of his deceased spouse, and the renunciation or disclaimer of any interest acquired by testate or intestate succession or by inter-vivos transfer.

"The guardian or conservator in his petition shall briefly outline the action or application of funds for which he seeks approval, the results expected to be accomplished thereby and the tax savings expected to accrue.

bate Court judge reserved and reported questions concerning the estate plan to the Appeals Court pursuant to G. L. c. 215, § 13.[2] We transferred the case to this court on our own motion.

The proposed estate plan principally consists of the creation of two inter vivos trusts: one, a revocable trust, providing for distributions to or for the ward during her lifetime from income or principal as necessary or advisable for her health and comfortable support, with remainders to certain charitable organizations; the other, an irrevocable

---

The proposed action or application of funds may include gifts of the ward's personal property or real estate, but transfers of real estate shall be subject to the requirements of chapter two hundred and two. Gifts may be for the benefit of prospective legatees, devisees or heirs apparent of the ward or may be made to individuals or charities in which the ward is believed to have an interest. The conservator or guardian shall also indicate in the petition that any planned disposition is consistent with the intentions of the ward insofar as they can be ascertained, and if the ward's intentions cannot be ascertained, the ward will be presumed to favor reduction in the incidence of the various forms of taxation and the partial distribution of his estate as herein provided. The conservator or guardian shall not, however, be required to include as a beneficiary any person whom he has reason to believe would be excluded by the ward."

[2] General Laws c. 215, § 13, as amended through St. 1975, c. 400, § 59, states in pertinent part that "[a] judge of the probate court by whom a case or matter is heard for final determination may reserve and report the evidence and all questions of law therein for consideration of the appeals court, and thereupon like proceedings shall be had as upon appeal." This statute is the sole source of authority under which a Probate Court judge can reserve and report a case. *Second Bank-State St. Trust Co.* v. *Linsley*, 341 Mass. 113, 116 (1960). *Dunlop* v. *Claussen*, 313 Mass. 715, 716 (1943). "This provision does not authorize a report of a part of a case or of specific questions of law arising therein. The report must be of the entire case and in such form that this court can enter or order the entry of a final decree disposing of the case." *Curran, petitioner,* 314 Mass. 91, 94 (1943).

The Probate Court judge "declined to issue judgment in accordance with the petition or any modification thereof pending resolution of certain questions." In view of the fact that specific questions were reported, the reservation and report does not comply with G. L. c. 215, § 13. The issues having been raised and briefed, however, we think it appropriate to respond to the judge's concerns. See *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943); *Moore* v. *Election Comm'rs of Cambridge,* 309 Mass. 303, 306 (1941).

charitable remainder trust which provides for an annual payment to or for the ward, during her lifetime, of an amount equal to nine per cent of the fair market value of the trust assets, determined annually, with remainders to certain charitable organizations.[3]

As we read the judge's reservation and report, three basic questions are presented: (1) whether the creation of revocable and irrevocable trusts specifying the ultimate distribution of trust assets to other than the estate of the ward is the same as making a will; (2) whether G. L. c. 201, § 38, as amended through St. 1976, c. 515, §§ 25-26, authorizes making a will; and (3) whether the proposed estate plan could be approved in a proceeding in which the Commonwealth's representation may have been neutralized by a conflict of interest, and in which the ward's next of kin were represented by a guardian ad litem for unborn and unascertained heirs.[4] Although not reported by the judge, the par-

---

[3] The estate plan also includes an inter vivos gift of $1,000 to the ward's brother-in-law.

[4] The questions formulated by the Probate Court judge were as follows: "The Court declined to issue judgment in accordance with the petition or any modification thereof pending the resolution of certain questions. First, it appeared to the court that the proposed trusts were substantially similar to making a will. In this regard, the first question is whether the creation of revocable and irrevocable trusts specifying remainders in favor of persons other than the estate of the ward is authorized by General Laws Chapter 201, Section 38, in the light of *Strange* v. *Powers*, 358 Mass. 126 . . . (1970), which holds that the statute in question does not authorize the making of a will. The second question is whether the doctrine of *Strange* v. *Powers*, (ibid.), as it might otherwise apply to this case, is superseded by the 1976 amendment of the statute (St. 1976, c. 515, § 25) which substantially modified the statute and, in particular, authorized the creation of revocable and irrevocable trusts and eliminated a provision under which an estate plan authorized by the Court was good only for a period of up to 12 months. Second, the Court was concerned as to whether a fundamental change in the probable devolution of the ward's estate could be effected in a proceeding in which the Commonwealth — the potential recipient of property upon escheat — was not actually heard and in which there was no representative of kindred. As to the Commonwealth, it appears that the Attorney General's advocacy may have been neutralized by the conflict between his duty to represent the interests of the Commonwealth and his duty to represent the interests of public charities. As to kindred, it was the Court's supposition that some relatives, no matter how remote, exists [*sic*]."

ties have also asked whether an estate plan which is found to be in accordance "with the ward's wishes so far as they can be ascertained, although speculative" complies with the requirements of G. L. c. 201, § 38.

We hold that the proposed estate plan is not a testamentary disposition and is authorized by the statute. Furthermore, we find no infirmities arising from representation of the next of kin by the guardian ad litem or of the Commonwealth by the Attorney General. Finally, we uphold the judge's finding that the estate plan complied with the statutory criteria.

We briefly summarize the evidence presented below and reported by the judge. Wanda W. Jones is a ninety year old woman residing at the McLean Hospital in Belmont. She was found to be incapacitated by reason of advanced age and mental weakness in 1975 conservatorship proceedings. She is mentally incompetent and is unlikely to recover sufficient mental capacity to execute a will.

The conservator was first introduced to the ward in 1950 by her husband, Dr. Stephen G. Jones. The conservator did occasional legal work for Dr. Jones until 1959, when Dr. Jones died. Thereafter the conservator became the ward's attorney. The conservator alleges that to the best of his knowledge, the ward has no husband, issue, or other kindred. On her death, unless it should ultimately prove to be the case that she has a will or next of kin, her estate would pass by escheat to the Commonwealth. The conservator believes his ward never made a will.[5]

In 1968, the conservator drafted a will for the ward under which virtually all her estate would pass to various charities,[6] but she never executed the will. Although the ward

---

[5] General Laws c. 201, § 38, requires that the conservator have custody of all wills or other testamentary dispositions executed by his ward. See note 1, *supra*.

[6] The charities given cash bequests in the unexecuted will were: Pleasant Street Congregational Church, Arlington; Symmes Hospital, Arlington; Massachusetts General Hospital, Boston; and New England Conservatory of Music, Boston. Phillips Andover Academy, Andover; Harvard Univer-

refused to sign the will, she never repudiated the dispositive provisions. The ward claimed that she had consulted with unidentified advisors who told her that the will was not properly drafted.[7]  There was no evidence as to the ward's competency at the time she refused to sign the will. Although the will was presented to the ward for signature only once, the conservator reminded her of it on several occasions, the last being either in 1974 or 1975. The conservator also testified that the ward made small annual gifts, shown in her tax returns, to the charities named in the draft will; however, no individual charitable gift exceeded seventy-five dollars.

Prior to the hearing on the petition, the judge ordered that notice be given to the Attorney General of the Commonwealth and to the Department of Mental Health, and both filed acknowledgments of notice. The Attorney General's acknowledgment stated that the Attorney General assented to the allowance of the petition. Pursuant to the court order, a notice of the proceedings was also published in a major Boston newspaper once a week for three successive weeks. The judge found that the conservator made no special effort to investigate the possible existence of kindred, but simply relied on his long-standing acquaintance with the ward and her deceased husband, the ward's statements to the conservator and others that she had no relatives, and the failure of any party claiming a relationship to have responded to the newspaper publication of notice in

---

sity, Cambridge; and Harvard University Medical School, Cambridge, were named as charitable remaindermen in the unsigned will. These charities are beneficiaries under the proposed estate plan, which also makes Phillips Andover Academy, Harvard University and Harvard University Medical School remaindermen. Of these beneficiaries, Symmes Hospital and the Harvard University Medical School were both institutions with which Dr. Jones was professionally associated.

[7] The conservator speculated that the ward's failure to sign the will may have been based on the common superstition that as long as she did not sign the will she would live.

the conservatorship proceedings.[8]   In addition, the conservator made inquiries of the ward's brother-in-law, and others who knew her well.   All reported that they did not know of any person claiming a relationship to the ward. However, no professional heir search was undertaken.

The court below appointed a guardian ad litem for the ward.   The guardian ad litem's report opposed the allowance of the petition in so far as the petition proposed that ninety per cent of the ward's property be transferred to the irrevocable trust and only ten percent to the revocable trust. The guardian ad litem for the ward recommended that fifty per cent of the ward's assets should be transferred to the revocable trust in order to assure the availability of sufficient funds, including principal, for the ward's needs. With that modification, the guardian ad litem for the ward recommended approval of the estate plan as making sufficient provision for the ward's own needs, as being in accordance with the ward's own wishes so far as they can be ascertained, and as reducing prospective State and Federal taxes by a large amount.

The court also appointed a guardian ad litem to represent the interests of the unascertained heirs.   He filed a report opposing the allowance of the petition on the ground that heirs who might with reasonable diligence be discovered at the time of the ward's death would be deprived of any rights they might have under the laws governing the estates of deceased persons.

The conservator moved for judgment in accordance with his petition, as modified by the recommendations of the guardian ad litem for the ward.   The Probate Court judge declined to issue a judgment but instead reserved and re-

---

[8] General Laws c. 201, § 17, requires that notice of a petition to appoint a conservator be given to the heirs apparent or presumptive of the person who will be the ward, including a husband or wife, if any.

At the time of the conservatorship proceedings, notice was given to the ward and the Department of Mental Health. The conservator reported that there were no heirs at law known to the petitioner and no one appeared as a result of the notice by publication in the local newspaper.

ported certain questions to the Appeals Court. As part of the judge's reservation and report, the judge made the following findings. First, the proposed estate plan, modified as recommended by the guardian ad litem of the ward, includes adequate provision for the ward's own maintenance and support. Second, the estate plan is in keeping with the ward's wishes, so far as they can be ascertained, although speculative, and provides gifts to such charities and friends as would be likely recipients of donations from the ward. Third, the estate plan is designed to minimize in so far as possible current and prospective State and Federal income, estate and gift taxes.

The judge indicated that the plan might be substantially similar to making a will, and therefore not authorized by the statute, G. L. c. 201, § 38. We do not think the proposed estate plan is objectionable for that reason.

In *Strange* v. *Powers,* 358 Mass. 126 (1970), we held that the prior version of § 38[9] did not empower the court to approve the making of a will because that would involve "an unduly broad construction of the term 'estate plan.'" *Id.* at 133. We think that the amendment to § 38 still does not permit a conservator to execute a will on behalf of his ward. The 1976 amendment to § 38 was largely drawn from § 5-408 (3)[10] of the Uniform Probate Code, which specifi-

---

[9] The prior version of § 38 (as amended through St. 1969, c. 422), while authorizing a conservator to establish an estate plan for tax minimization purposes or for gifts to those charities and persons who would be likely donees of the ward, did not contain the specific list of permitted applications of funds contained in § 38 as most recently amended.

[10] The Uniform Probate Code, § 5-408 (3) (U.L.A. Master ed. 1972), reads: "After hearing and upon determining that a basis for an appointment or other protective order exists with respect to a person for reasons other than minority, the Court has, for the benefit of the person and members of his household, all the powers over his estate and affairs which he could exercise if present and not under disability, except the power to make a will. These powers include, but are not limited to power to make gifts, to convey or release his contingent and expectant interests in property including marital property rights and any right of survivorship incident to joint tenancy or tenancy by the entirety, to exercise or release his powers as trustee, personal representative, custodian for minors, conser-

cally prohibits the conservator from making a will. We think that our decision in *Strange* v. *Powers, supra,* stands unimpaired. The omission of language prohibiting the making of a will from § 38 is not decisive. "[W]hen the same legislature, in a later statute, use the terms of an earlier one which has received a judicial construction, that construction is to be given to the later statute. . . . For if it were intended to exclude any known construction of a previous statute, the legal presumption is, that its terms would be so changed as to effect that intention." *Luacaw* v. *Fire Comm'r of Boston,* 350 Mass. 326, 329 (1966), quoting *Commonwealth* v. *Hartnett,* 3 Gray 450, 451 (1855). See *Condon* v. *Haitsma,* 325 Mass. 371, 373 (1950).

Moreover, our case law does not support the view that the creation of an inter vivos trust is "the making of a will." In *National Shawmut Bank* v. *Joy,* 315 Mass. 457 (1944), the validity of a revocable trust in which the settlor not only created a life interest for himself and another, but also retained a general power of appointment subject to two life estates was upheld despite the argument that the trust was testamentary in nature and did not comply with the statute of wills. "The distinguishing feature of a testamentary disposition is that it remains ambulatory until the death of the one who makes it. Until he dies, his title remains unimpaired and unaffected. . . . If the interest in question passes from the owner presently, while he remains alive, the transfer is inter vivos and not testamentary." *Id.* at 470-471. Accord, *Eaton* v. *Eaton,* 233 Mass. 351, 372 (1919) ("There is nothing essentially testamentary in the act of a man making a present gift of his property to a trustee, reserving in-

---

vator, or donee of a power of appointment, to enter into contracts, to create revocable or irrevocable trusts of property of the estate which may extend beyond his disability or life, to exercise options of the disabled person to purchase securities or other property, to exercise his rights to elect options and change beneficiaries under insurance and annuity policies and to surrender the policies for their cash value, to exercise his right to an elective share in the estate of his deceased spouse and to renounce any interest by testate or intestate succession or by inter vivos transfer."

come for life to himself with remainder at his death to third persons").

The fact that a certain disposition of property, here the creation of revocable and irrevocable trusts with charitable remainders, is virtually a substitute for a will is unobjectionable. "If an owner of property can find a means of disposing of [the property] inter vivos that will render a will unnecessary for the accomplishment of his practical purposes, he has a right to employ it. The fact that the motive of a transfer is to obtain the practical advantages of a will without making one is immaterial." *National Shawmut Bank* v. *Joy*, 315 Mass. at 471.

The amendment to § 38 grants the ward through a conservator most of the powers that the ward would have if the ward were of full capacity. "[T]he purpose is to carry out the ward's wishes so far as they can be ascertained, and not solely for tax minimization . . . ." Young, Probate Reform, 18 B.B.J. No. 3, 7, 19 (1974). See Newbury, the Uniform Probate Code — Report of the Boston Bar Association Study Committee, 17 B.B.J. No. 1, 7, 28 (1973); Sherman, Estate Planning by Guardians and Conservators — G. L. c. 201, § 38, 63 Mass. L. Rev. 257 (1978); 2 Uniform Probate Code Practice Manual 531-532 (R. Wellman ed. 1977). There is no reason not to allow the ward to use inter vivos trusts in estate planning. Given the legislative policy to carry out "the ward's wishes so far as they can be ascertained," the arguments of the guardian ad litem for unborn and unascertained heirs to the effect that authorization of the estate plan in question will undermine the well-established laws of this Commonwealth governing devolution and descent of property are not persuasive.

The most serious question raised by the reservation and report is the adequacy of the notice by publication to unascertained heirs.[11] Under § 38, the precise means of notice to

---

[11] The reservation and report phrases this issue in terms of "no representative of kindred." See note 4, *supra*. However, unascertained persons were, in fact, represented by a guardian ad litem. Thus we read the reservation and report as raising the issue of notice and this issue has been briefed by the parties.

interested persons is left to the discretion of the Probate Court judge. Generally, if a court's order for notice pursuant to § 38 has been followed, any ensuing judgment would bind the party affected. *Strange* v. *Powers,* 358 Mass. 126, 135 (1970). The guardian ad litem for persons unborn and unascertained complains that the notice by publication ordered by the court is constitutionally inadequate. We disagree.

Due process permits notice by publication for "[t]hose beneficiaries . . . whose interests or whereabouts could not with due diligence be ascertained." *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317 (1950). Notice by publication is prohibited "with respect to a person whose name and address are known or very easily ascertainable." *Schroeder* v. *City of N.Y.,* 371 U.S. 208, 212-213 (1962). Our cases hold that due process "does not demand the impossible. It is impossible to mail a copy of a citation to a person unborn, and as a practical matter it is impossible to mail one to a person whose identity cannot with reasonable diligence be ascertained." *Young* v. *Tudor,* 323 Mass. 508, 514 (1948).

The judge found the conservator's belief that his ward had no kindred was based on his thirty-year friendship with the ward (and prior to 1959, with her deceased husband), her frequent statements to him and to others that she had no relatives, the lack of response to the newspaper publication of notice of the conservatorship proceedings,[12] and the lack of any contrary information from the ward's brother-in-law and two of her close friends. The record is clear that the conservator had no actual knowledge of the existence of any heirs, and furthermore, that he possessed no information which, if pursued, might have led to the discovery of kindred.[13] Compare *McCabe* v. *Rourke,* 301 Mass. 180 (1938),

---

[12] We do not suggest that notice of the conservatorship proceedings, if such notice had been received, would have been sufficient notice as to any subsequent proceedings.

[13] If the ward's maiden name were known, the petitioner could have searched local phone directories, city directories, or tax rolls for persons

and *Cleaveland* v. *Draper*, 194 Mass. 118 (1907), with *Tucker* v. *Bowen*, 354 Mass. 27 (1968), and *Welch* v. *Flory*, 294 Mass. 138 (1936).

The question then is whether the conservator is required to retain the services of a professional genealogist in this case. We think not.[14] It is not "unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee. . . . [S]uch impracticable and extended searches are not required in the name of due process." *Mullane* v. *Central Hanover Bank & Trust Co.*, *supra* at 317-318. See *Lacy* v. *Fitzpatrick*, 54 Cal. App. 3d 172 (1975) (accounting of testamentary trustees, remanded in light of language just quoted from *Mullane* for factual finding as to reasonable diligence in notifying beneficiaries). See also *In re McGarrity*, 69 App. Div.2d 819 (N.Y. 1979), where, on evidence very similar to the case at bar, an administrator was allowed to settle the estate of an absentee.

Finally, it is by no means clear that the heirs' participation in the proceedings would affect the outcome. General Laws, c. 201, § 38, authorizes the conservator to exclude "as a beneficiary any person whom he has reason to believe would be excluded by the ward." Thus, the interest of any person whose existence was unknown to the ward or whose existence she denied in conversations with family and friends is very attenuated. There is no evidence that the ward ever intended to benefit her next of kin.

---

with a similar name. See *Cleaveland* v. *Draper*, 194 Mass. 118, 121 (1907). Of course, persons who might be found through such sources are precisely those persons who, because of their local residence, are most likely to have been reached by the notice published in the newspaper.

[14] Our conclusion on this issue is influenced by the fact that none of the available information suggests more than a remote possibility that next of kin of the ward would be located, and in view of the ward's advanced age and ill health, we think the delay occasioned by a genealogical search would be unduly burdensome in this case.

Under similar provisions of North Carolina law,[15] the North Carolina Supreme Court said persons who had a contingent or potential financial interest in the death of the incompetent are limited "to present[ing] to the court facts which will assist the court in determining whether the action proposed by the trustees is detrimental to the estate of the incompetent, or whether the incompetent, if then competent, would probably not act as the trustee proposes to act." *In re Kenan*, 262 N.C. 627, 638 (1964). In the case at bar, the judge had appointed a guardian ad litem for persons unborn and unascertained, who very ably represented their interests. As a result, it is hard to imagine what further arguments could be presented on their behalf.

The reservation and report raises a question whether the Attorney General's representation of the Commonwealth might have been "neutralized by the conflict between his duty to represent the interests of the Commonwealth and his duty to represent the interests of public charities." Since the Legislature has determined that the public interest is served by enabling a conservator to dispose of the property of his ward "in keeping with the ward's wishes so far as they can be ascertained" and for tax minimization, G. L. c. 201, § 38, we find no conflict between the Commonwealth's interest and the Attorney General's position. The decision to assent to the estate plan is well within the authority of the Attorney General. *Secretary of Administration & Fin.* v. *Attorney Gen.*, 367 Mass. 154, 163 (1975). Accord, *Feeney* v. *Commonwealth*, 373 Mass. 359 (1977).

---

[15] North Carolina General Statutes § 35-29.6(6)(b)(2) (1976), dealing generally with gifts of principal from an incompetent's estate for certain purposes, requires that where the incompetent has made no will, notice must be given to any person who would take in the event of intestacy. North Carolina General Statutes § 35-29.12 (1976), dealing with similar gifts of certain limited trust interests, contains a similar provision. Contrast N.C. Gen. Stat. § 35-23 (1976), dealing with advancements of surplus income to certain relatives of the incompetent, which requires that all persons who would be entitled to a distributive share of the incompetent's estate if he were then dead be made parties.

We have now disposed of the specific issues raised by the Probate Court judge. The remaining question briefed by the parties is whether an estate plan which is found to accord "with the ward's wishes, so far as they can be ascertained, although speculative" complies with the requirements of G. L. c. 201, § 38. We also address this issue. See note 2, *supra.*

The findings of a Probate Court judge will not be overturned unless they are plainly wrong. *Williams* v. *Howard,* 330 Mass. 323, 325 (1953). *Boston Safe Deposit & Trust Co.* v. *Lewis,* 317 Mass. 137, 140 (1944). In a petition under §. 38, the conservator is not required to prove that a proposed estate plan conforms with absolute certainty to the ward's wishes. The court is merely required to "approve [the estate plan] as being in keeping with the ward's wishes so far as they can be ascertained," and "as designed to minimize insofar as possible current or prospective state or federal income, estate and inheritance taxes." G. L. c. 201, § 38. The plan may "provide for gifts to such charities, relatives and friends as would be likely recipients of donations from the ward . . . [i.e., those] individuals or charities in which the ward is believed to have an interest." *Id.*

The guardian ad litem for unascertained heirs argues that the estate plan sought to be established is substantially based on the terms of a will the ward refused to sign. While this is true, the evidence indicated that the will was drafted according to her instructions, instructions which were never changed. The ward continued to make modest annual gifts to the same charitable institutions named in the will. Where the record is not clear as to the ward's wishes, § 38 creates a presumption that the ward would favor a reduction in estate taxes and a distribution of her estate to achieve that goal. "[T]here is [no] evidence of any settled intention of the incompetent, formed while sane, to the contrary." *Estate of Christiansen,* 248 Cal. App.2d 398, 423 (1967). Compare *In re Turner,* 61 Misc. 2d 153 (N.Y. Sup. Ct. 1969) (gifts to three minor children denied where incompetent's will postponed distribution of any portion of his estate

until his children reached twenty-five); *In re Myles,* 57 Misc. 2d 101 (N.Y. Sup. Ct. 1968) (gifts to son and daughter denied pending testimony as to the survival clause in incompetent's will). Although the evidence offered as to the ward's wishes is not conclusive, we cannot say that the Probate Court judge is plainly wrong in finding that the estate plan is "in keeping with the ward's wishes." See G. L. c. 201, § 38.

We summarize our answers to the questions raised by the judge's reservation and report and by the parties to this proceeding. Under G. L. c. 201, § 38, the Probate Court has authority to approve the estate plan proposed by the conservator, as modified in accordance with the report of the guardian ad litem for the ward. The findings made by the Probate Court judge relative to this petition are not plainly wrong. The proceedings are not open to attack either because the Commonwealth's interests were inadequately represented or because notice by publication to unknown heirs did not meet due process requirements. Thus, there is no legal impediment to the entry of a judgment approving the proposed estate plan as modified in accordance with the report of the guardian ad litem for the ward.

Since specific questions were reserved and reported, we assume that the Probate Court will consider the proposed estate plan in light of this opinion. See *Curran, petitioner,* 314 Mass. 91, 94 (1943); G. L. c. 215, § 13, at note 2, *supra.*

*Report discharged.*