IN THE MATTER OF JEAN WESSON MURRAY.

Barnstable. October 4, 1990. - December 3, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Incompetent Person. Conservator*, Estate plan. *Gift.*

General Laws c. 201, § 38, did not permit a probate judge to approve a conservator's proposed amendment to a revocable trust created by his ward, where the amendment, which was intended to redistribute the estate tax burden among the assets of the ward's estate, would not have resulted in any over-all tax savings to the estate or qualified as a gift of any of the ward's property. [734-735]

PETITION for conservatorship filed in the Barnstable Division of the Probate and Family Court Department on April 22, 1988.

A petition seeking authorization to amend a revocable trust, filed on April 6, 1989, was heard by *John V. Harvey*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Harold J. Carroll* (*Stephen M. Voltz* with him) for Victoria W. Hope.

*Raymond H. Young* (*James R. DeGiacomo* with him) for the conservator.

*Mary G. Sullivan* for Cynthia Sydnor & another, submitted a brief.

NOLAN, J. The conservator of Jean Wesson Murray has filed a petition for estate planning under G. L. c. 201, § 38 (1988 ed.),[1] by which he seeks to amend Murray's 1979

_____

[1]General Laws c. 201, § 38 reads: "[A conservator or guardian] shall manage the estate of his ward frugally and without waste, and shall, except as otherwise provided, apply the same, so far as may be necessary, to the comfortable and suitable maintenance and support of the ward and his

trust. Jean Wesson Murray (Murray) was residing in Con-

family. If the income and profits are insufficient for that purpose, he may sell the real estate upon obtaining a license therefor, and shall apply the proceeds of such sale, so far as may be necessary, for the maintenance and support of the ward and his family. Such license and the application therefor shall state whether the ward is married or single. He shall have custody of all wills, codicils, and other instruments purporting to be testamentary dispositions executed by his ward.

"The probate court, upon the petition of a conservator or guardian, other than the guardian of a minor, and after such notice to all other persons interested as it directs, may authorize such conservator or guardian to take such action, or to apply such funds as are not required for the ward's own maintenance and support, in such fashion as the court shall approve as being in keeping with the ward's wishes so far as they can be ascertained and as designed to minimize insofar as possible current or prospective state or federal income, estate and inheritance taxes, and to provide for gifts to such charities, relatives and friends as would be likely recipients of donations from the ward.

"Such action or application of funds may include but shall not be limited to the making of gifts, to the conveyance or release of the ward's contingent and expectant interests in property including marital property rights and any right of survivorship incident to joint tenancy or tenancy by the entirety, to the exercise or release of his powers as donee of a power of appointment, the making of contracts, the creation of revocable or irrevocable trusts of property of the ward's estate which may extend beyond his disability or life, the exercise of options of the ward to purchase securities or other property, the exercise of his rights to elect options and to change beneficiaries under insurance and annuity policies, and the surrendering of policies for their cash value, the exercise of his right to an elective share in the estate of his deceased spouse, and the renunciation or disclaimer of any interest acquired by testate or intestate succession or by inter-vivos transfer.

"The guardian or conservator in his petition shall briefly outline the action or application of funds for which he seeks approval, the results expected to be accomplished thereby and the tax savings expected to accrue. The proposed action or application of funds may include gifts of the ward's personal property or real estate, but transfers of real estate shall be subject to the requirements of chapter two hundred and two. Gifts may be for the benefit of prospective legatees, devisees or heirs apparent of the ward or may be made to individuals or charities in which the ward is believed to have an interest. The conservator or guardian shall also indicate in the petition that any planned disposition is consistent with the intentions of the ward insofar as they can be ascertained, and if the ward's intentions cannot be ascertained, the ward will be presumed to favor reduction in the incidence of the various forms of taxation and the partial distribution of his estate as herein provided. The conservator or guardian shall not, however, be required to include as a beneficiary any person who[ ] he has reason to believe would be excluded by the ward."

necticut at the time of the hearing on the petition. She was then eighty years of age and suffering from Alzheimer's disease. Her heirs apparent are her two sisters and two nephews, children of her deceased brother. One of Murray's nephews has one child, the other has three children. One sister has two children, a nephew and niece of Murray. This nephew has three children and the niece has two children. Murray enjoyed a warm and loving relationship with her nephews, niece, and their children.

The petition focuses on article fifth of the Jean W. Murray Trust (trust), created in 1979 and directing the trustee to pay out of the trust principal "all federal and state taxes in the nature of estate, inheritance, or like taxes occasioned by the Donor's death and any interest thereon, except any such taxes and interest with respect to property held in any trust other than the trusts hereunder, all without requiring any reimbursement to the trust from the Donor's executor or administrator or other persons receiving property as a result of her death."

The conservator alleges that, under this tax clause, the trust assets would be "largely consumed" in paying the Federal, Massachusetts, and Connecticut estate taxes. This result follows primarily from the dramatic increase in value of real estate owned by the ward.

The petition further alleges that, if Murray were competent, she would revise the tax provision in such wise as to subject the devise of the real estate passing to her cousin, Victoria Wesson Hope, to its pro rata share of the estate taxes, just as the devise of the real estate to Murray from her aunt, Cynthia M. Wesson, had been made subject to its pro rata share of the estate taxes of the Wesson estate. The conservator seeks authorization to amend the trust by deleting the present tax provision and inserting a new tax provision requiring the real estate to bear its pro rata share of the tax burden which will eventuate on Murray's death.

A judge in the Probate and Family Court granted the petition and Hope appealed. We reverse.

The Probate and Family Court has the statutory authority under § 38 to authorize a conservator "to take such action, or to apply such funds as are not required for the ward's own maintenance and support, in such fashion as the court shall approve as being in keeping with the ward's wishes so far as they can be ascertained and as designed to minimize . . . taxes, and to provide for gifts to such charities, relatives and friends as would be likely recipients of donations from the ward."[2] Under this section of the statute, therefore, the Probate Court may authorize the conservator to take actions designed to fulfil one of two goals: tax minimization or provision of gifts.

The alterations proposed by the conservator would not result in any over-all tax savings to the estate. Rather, the changes would redistribute the tax burden so that some beneficiaries of the trust who would presently get nothing from the trust would instead get something at distribution. Therefore, only if the proposed amendment to the trust can be characterized as an "action . . . to provide for gifts" is the judge authorized to approve it under § 38.

In order for a transfer to qualify as a gift, there must exist donative intent on the part of the donor and actual or symbolic delivery of the subject matter in a manner which completely transfers the dominion and control of the subject matter from the donor. *Silverman* v. *A.& L. Heel Corp.*, 353 Mass 108, 110 (1967). The amendment proposed by the conservator provides neither for delivery of the subject matter nor for a complete surrender of control over the subject mat-

---

[2]We have turned our attention to this part of § 38 in only two cases: *Strange* v. *Powers*, 358 Mass. 126 (1970), and *Matter of Jones*, 379 Mass. 826 (1980). Neither case is especially helpful in resolving the present case. In *Strange*, we upheld the constitutionality of this provision of § 38, and held that, where appropriate, a conservator or guardian may even be the recipient of the ward's donation. In *Matter of Jones*, we cautioned that § 38 does not empower a conservator to execute a will on behalf of his ward and that a conservator's proposed estate plan which called for donations to several charities to which the ward had already made gifts was consonant with the ward's wishes. The alternative was an escheat to the Commonwealth.

ter. The action proposed by the conservator does not "provide for gifts" and thus the probate judge lacked the power to authorize such an action.

Because G. L. c. 201, § 38, does not authorize a probate judge to approve an action by a conservator which neither results in a lesser tax burden on the estate nor provides a gift to likely recipients of the ward's largess, we reverse the judgment of the Probate Court.

*So ordered.*