JOHN SMITH & another[1] *vs.* JAMES BROWN & another.[2] November 1, 1999. *Practice, Civil,* Report. *Probate Court,* Report. *Parent and Child,* Gestational surrogacy.

We granted a joint application for direct appellate review in this case because we thought it raised issues in connection with a so-called gestational surrogacy arrangement, see *R.R.* v. *M.H.*, 426 Mass. 501, 509 n.10 (1998), that needed to be decided by this court. After further examination, we conclude that the reservation and report of the case with a lengthy series of questions by a judge in the Probate and Family Court is improper, and that the case does not present a suitable occasion to comment on the issues raised by the questions.[3] Accordingly, we discharge the report.

We briefly describe the background of the case. In a gestational surrogacy arrangement, the Smiths created an embryo using Jane's egg and John's sperm and transferred the embryo to the uterus of Susan Brown who is Jane's sister. The parties, including Susan's husband, James Brown, agreed that the resulting child would be the child of the Smiths who created the embryo and not the child of Susan, the gestational carrier, and her husband. The Smiths filed a complaint, accompanied by affidavits, in the Probate and Family Court pursuant to G. L. c. 215, § 6, naming the Browns as defendants and seeking the entry of a "declaration of paternity and maternity" before the birth of the child. The defendants, the Browns, filed an answer admitting "each and every one of the allegations alleged in the [c]omplaint." The parties then moved for the entry of an agreed on judgment prior to the child's birth. The judge denied the motion, generally on the basis that, lacking a dispute, the Probate and Family Court lacked authority to enter the proposed judgment. The complaint was then amended (with the judge's approval) to use the framework of G. L. c. 209C, the statute governing the status of children born out of wedlock, to secure the declaration of maternity and paternity sought by the Smiths effective on the birth of the child. A judgment entered which was agreeable to the parties, and no appeal was taken. The judge then reserved and reported the case with questions of law.

General Laws c. 215, § 13, provides: "A judge of the probate court by whom a case or matter is heard for final determination may reserve and report the evidence and all questions of law therein for consideration of the appeals court, and thereupon like proceedings shall be had as upon appeal. And if, upon making an interlocutory judgment, decree or order, he is of opinion that it so affects the merits of the controversy that the matter ought, before further proceedings, to be determined by the appeals court, he may report the question for that purpose, and stay all further proceedings except such as are necessary to preserve the rights of the parties." This statute is the sole source of authority under which the judge reserved and reported the case, see *Matter of Jones*, 379 Mass. 826, 828 n.2 (1980), and it authorizes a report in only two situations. See also Mass. R. Dom. Rel. P. 64, 365 Mass. 831 (1999).

---

[1]His wife, Jane Smith.

[2]His wife, Susan Brown. The names of the Smiths and Browns are pseudonyms.

[3]The judge posed two main questions, the first of which states four additional questions and the second of which states six additional questions. In view of our conclusion that the report should be discharged, there is no need to set forth the questions.

There is no "interlocutory judgment, decree or order" in issue. The case, which involved no controversy, has been decided, and a final judgment has entered which is satisfactory to the parties and was not appealed.[4] Therefore, neither of the situations contemplated in § 13 applies to justify a report. The questions stated in the report implicitly concern circumstances that go beyond the facts of the case and that may involve unforeseen complex issues concerning the rights of the genetic parents and the gestational carrier (and possibly her husband if she has one) on such topics as insurance obligations, emergency treatment during pregnancy and neonatal care thereafter, and consideration of termination of pregnancy and rights of parenthood between the parties, to mention just a few. In other cases, despite the impropriety of a report, we have chosen to comment on the issues. These cases, however, have involved a dispute and have been fully briefed in an adversary fashion. This is not such a case. The Probate and Family Court may wish to consider a protocol that (a) allows parties to a gestational surrogacy arrangement such as this one (which involves relatives who have agreed on all matters and have supported their complaint with affidavits[5]) to seek the entry of a judgment pursuant to G. L. c. 215, § 6, if that statute is deemed appropriate, or pursuant to other authority, declaring maternity and paternity; and (b) establishes the time when any such judgment should become effective. In cases involving other types of gestational surrogacy arrangements, controversies can be considered by an appellate court, on an expedited basis if need be, on proper reports or on appeals taken from appealable orders or judgments.

*Report discharged.*

*Susan L. Crockin* for Jane Smith.
*Julie E. Ginsburg* for James Brown & another.

---

[4]In an affidavit filed in connection with an assented-to motion to enlarge time for filing their brief, counsel for the Smiths stated that "this is a reported case in which the parties did not seek to appeal the matter and were all satisfied with the court's judgment."

[5]In addition to their own affidavits which stated their understandings and agreements, the parties filed two other affidavits. The first affidavit was from a physician who is board certified in reproductive endocrinology and who specializes in infertility. The affidavit described the in vitro fertilization procedure performed on Jane Smith and the embryo transfer to Susan Brown with attendant medical procedures which ensured that Susan's pregnancy could not have resulted from one of her own eggs or her husband's sperm, but only from the embryo transfer. The second affidavit is from a licensed social worker describing the counselling given to the parties over the implications of the gestational surrogacy arrangement.